## Wilson, County Superintendent of Schools, et al. v. Alsip et al.

(Decided Nov. 23, 1934.)

B. B. SNYDER, C. S. WILSON, J. B. SNYDER, J. D. TUGGLE and J. B. CAMPBELL for appellants.

H. H. OWENS and T. B. CULTON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The controlling question in this case is, Who has the right to nominate teachers in a school wherein are taught not only the elementary grades but also the higher grades, the subdistrict trustee or the county school superintendent?

Prior to the codification of the school laws by the Legislature of 1934 (Acts 1934, c. 65 [Ky. Stats. Supp.

1934, sec. 4363 et seq.]), the controversy which had raged between the subdistrict trustee or trustees and the county superintendent over the right to nominate teachers in the county schools had been threshed out and decided by this court in the many cases which reached it, and which presented the different phases of that controversy. These cases are collected and reviewed in the case of Stith v. Powell, 251 Ky. 155, 64 S. W. (2d) 491. Construing in those cases sections 4399a-7, 4399a-11, and 4526b-3 of the 1930 Edition of Carroll's Kentucky Statutes, we held that the subdistrict trustee had the right to recommend teachers in the rural schools where only common school branches were taught, and that the county superintendent had the right to nominate teachers in the county high schools and in consolidated schools.

The Legislature of 1934 (Acts 1934, c. 65 [Ky. Stats. Supp. 1934, sec. 4363 et seq.]) undertook to codify and simplify the school laws of the state. To that end, among other things it provided that each county of the commonwealth should constitute one county school district from which was excepted whatever independent school districts, such as graded school districts, existed therein. Section 4399-2 of the 1934 Supplement to Carroll's Kentucky Statutes. This same section also provides that each county school district shall provide by the establishment of schools or by contract with another school district at least an approved twelve-grade school service for the pupils in its district. It will be noted that the duty here enjoined upon the school district which is the county outside of the area of the independent school districts is to provide for the pupils of the county outside the area of the independent school districts a twelve-grade school service. In performing this duty, the county board of education is given a very broad discretion by section 4399-20 of the 1934 Supplement to the Statutes. That section, in part, provides:

"Each board of education shall have general control and management of the public schools in its district and may establish such schools and provide for such courses and other services as it deems necessary for the promotion of education and the general health and welfare of pupils as are consistent with the rules and regulations of the State Board of Education. * * * Schools shall be main-

tained for pupils of elementary grade within a reasonable walking distance of their homes or the board of education shall furnish transportation from its general funds or otherwise for any elementary pupil or pupils who do not reside within such distance.''

While it is true that in stating what school service the county board is to furnish the pupils of the county school district, the use of the terms ''high school'' and ''consolidated school''. is not employed, the term ''twelve-grade school service'' being used instead, yet we note in this section 4399-20 that the Legislature yet had in its mind the distinction between the elementary grades and the higher grades, for it specifically enjoined upon the county board to maintain schools for pupils of the elementary grades within reasonable walking distances of their homes or to furnish transportation for such elementary pupil or pupils. A reading of these two sections of the Statutes to which we have referred makes it quite clear that the Legislature did not contemplate that the twelve grades should necessarily have to be taught in every school established in the county. Of course, every pupil is to have the right of opportunity to take all twelve grades, but how this opportunity is to be afforded the pupils of the county school district lies within the sound discretion of the county board of education. It may maintain schools in which only the elementary grades are taught. It may maintain schools in which only the higher grades are taught. It may maintain schools in which the whole twelve-grade service is afforded. It may maintain what is known as the 6-3-3 service—that is, schools where only the first six grades are taught, schools wherein the next three grades are taught, sometimes known as junior high schools, and schools wherein the last three grades are taught, sometimes known as senior high schools. Or it may maintain schools in which any combination of these twelve grades are deemed advisable, provided always, of course, the board in so doing is not acting arbitrarily or abusing a sound discretion.

That the Legislature further had in mind the distinction between the elementary and the higher grades when it came to provide for teachers' certificates is manifest by the provisions relating thereto. By section 4502-3 of the 1934 Supplement to the Statutes it is provided that certificates shall be divided into three classes

—elementary certificates, high school certificates and administration and supervision certificates. Only the first two interest us. As to them, this same section provides that an elementary certificate shall be valid for use in any elementary school in this commonwealth, and that the high school certificates shall be valid for use in any high school in this commonwealth. As, literally speaking, the School Code does not provide for elementary or high schools but a twelve-grade school service in lieu of such schools, to give effect to the intention of the Legislature as thus expressed in this section 4502-3 of the Statutes, as well as that expressed in section 4399-20, we must construe the language of the Legislature when it refers in these sections to elementary schools, elementary pupils, and high schools to mean the first eight grades where the word "elementary" is used, and the last four grades where the words "high school" are used. Such was the nomenclature employed to designate these grades prior to the codification of 1934. and it cannot be doubted that the Legislature used these words "elementary" and "high school" with the meaning that then attached to them.

As presented to the Legislature, the 1934 codification of the school laws did not provide for a subdistrict trustee or trustees. Section 29 of article 5 of the Codification Act (Ky. Stat. Supp. 1934, sec. 4399-34) as introduced vested the nomination of all principals and teachers in all the schools of the county in the county superintendent. The Legislature was unwilling to abolish the subdistrict trustee or to curtail the powers such trustee had theretofore enjoyed. So an amendment to article 5 of the act to take care of the subdistrict trustee was introduced and adopted. Section 6½ (b) of article 5, now section 4399-9 of the 1934 Supplement, being part of this amendment, so far as pertinent, provides:

> "The subdistrict trustee shall nominate a competent and qualified teacher or teachers for each teaching position in his subdistrict, * * * and the board of education of the county school district shall elect such person or persons to such teaching position or positions except that the board of education of the county school district may reject the nomination or nominations for cause, provided all rejections shall be stated in writing. In the event of the rejection of the person or persons nominated, the subdistrict trustee or trustees shall nominate

another person for the position or positions and the board of education may reject such nomination or nominations for cause.''

To bring section 29 of article 5 in some sort of harmony with this section 6½ (b), it too was amended (see section 4399-34 of the 1934 Supplement), and, as amended, reads, so far as pertinent to our present question, as follows:

''Except as provided under Article V, section 6½ of this Act, all appointments, promotions, transfers and dismissals of principals, supervisors, teachers, and other public school employees shall be made only upon the recommendation of the superintendent of schools, subject to the approval of the board.''

A reading of the various sections of this codification of 1934 as amended to take care of the subdistrict trustee leads to the inescapable conclusion that the Legislature was aiming to keep in force the powers and duties of the trustee as they existed prior to this codification. Section 4399-9 of the Statutes Supplement 1934 states that the subdistrict trustee shall nominate the teachers of his subdistrict. The Legislature having, as we have seen, provided that elementary grades should be maintained within reasonable walking distance of all elementary pupils or else that transportation be provided for such pupils, inasmuch as until changed the boundaries of the subdistricts as they were prior to the 1934 codification remained as they were (see section 4399-6 of the 1934 Supplement to the Statutes), we must conclude that the Legislature felt that the elementary grades would continue to be maintained in these subdistricts. The Legislature knew that the county school board would not have to and indeed would not, necessarily because of the expense involved and the lack of pupil attendance, maintain the higher grades in each of these subdistricts, but only in such places as would be reasonably accessible to those wishing a higher education than that afforded by the elementary grades. As these schools in which the higher grades would be taught would, in most instances, provide service for pupils other than one subdistrict, the Legislature never looked upon them as subdistrict schools or schools of the subdistrict. By retaining the power of the county superintendent to appoint teachers except in so far as his power was curtailed by section

6½(b) of article 5, the Legislature plainly had in view the right of the superintendent to appoint some teachers; otherwise it would have eliminated this power entirely when it was amending the act to take care of the subdistrict trustee. Moreover, this section 4399-34 was further amended by adding thereto, after it had been amended to bring it in harmony with section 6½(b) of article 5, these words:

> "In the event the board of education cannot agree with the superintendent as to any certificated person recommended by such superintendent, such board of education may appeal to the State Board of Education to review the case and the decision of the State Board of Education shall be final."

Such an amendment is meaningless unless the Legislature intended the county superintendent to have the right in some cases to nominate teachers. So the Legislature evidently meant the subdistrict trustee and the county superintendent each to have some power of appointment, each within his own sphere. We can give no effect to these provisions except by concluding that the Legislature did not, by the 1934 codification, intend to change the status with reference to the nomination of teachers as it stood prior to this codification. All the various sections of the act to which we have referred give color to this conclusion, and fortify our reasoning. We therefore are of the opinion that under the 1934 codification the subdistrict trustee has the right to nomination only in those schools where only the elementary grades, that is, up to or through the eighth grade, are taught. In the other schools, it is the county superintendent who has the right of nomination. The school here in question being of the class other than an elementary school, as the record discloses it to be, it was the county superintendent and not the subdistrict trustees who had the power of nomination.

The judgment of the lower court not being in accord with these views, it is reversed, with instructions to enter a judgment in conformity with this opinion.

Whole court sitting.