# County Board of Education of Bath County, Ky., et al. v. Goodpaster.

(Decided June 18, 1935.)

W. B. WHITE and G. C. EWING for appellants.

JOHN J. WINN and J. A. RICHARDS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

On February 16, 1935, the appellee, Miss Emma Goodpaster, was nominated by the trustees of Sees Subdistrict No. 42 of Bath County to teach in that school for the ensuing term. The nomination was timely lodged with the county superintendent. Without having acted upon it, the county board of education, on March 19th, adopted a resolution discontinuing all of the subdistricts. The preamble names twelve districts as having fewer than fifty resident children of school age, and twenty-six as having more than that number. Included in the latter class is Sees No. 42. It further recites that those districts having fewer than fifty pupils had been abolished by section 4399-6 of the Statutes Supplement 1934, and under that section the county board had authority to discontinue all subdistricts. Enumerating reasons why the authority should be exercised, it was ordered that all districts should be and were thereby discontinued and that all the county outside three independent graded school districts should be organized and administered as one school district and all schools located therein should be operated and conducted as educational units of the county system.

Thereafter, on April 6th, the board elected teachers for all the schools. In most instances they regarded the recommendations previously made by the district trustees but did not choose Miss Goodpaster. Instead, the board elected Mrs. Earl Maxey to teach in the Sees school.

' This suit was instituted by Miss Goodpaster against the county board and its members and Mrs. Maxey. She claims the right to teach in the school and attacks the validity of the action of the board in discontinuing the Sees district and in rejecting her nomination. The court adjudged the order of the board to be void in so far as it affects the subdistricts; that Miss Goodpaster is entitled to teach the school; and the naming of Mrs. Maxey intead was of no effect. An injunction was accordingly granted.

The case tests the validity of the order of the county board of education, and, in turn, the validity and construction of section 6, article 5 of the School Code of 1934 (Acts 1934, p. 197, section 4399-6, 1934 Supp. to Statutes).

In the process of development of the school laws and system of the state before the 1934 act, there was a gradual departure from the old plan of community control of local schools. A county board of education was established and its powers enlarged from time to time. The Legislature provided that the county outside of the established independent graded and city school districts should constitute one district, and vested broad powers in the county board in the matter of changing, consolidating, and establishing subdistricts and transferring pupils from one to another. Section 4426-1, Statutes, 1930 Edition; Knox County Board of Education v. Fultz, 241 Ky. 265, 43 S. W. (2d) 707; Audas v. Logan County Board of Education, 246 Ky. 534, 55 S. W. (2d) 341. The experience of the educators and administrative officers proved the wisdom of this departure from local influences so that the concept of centralization and unification in management appears throughout the new code as one of the primary timbers in the structure. The power of determining the general educational policies, particularly in respect of qualification of teachers, the curricula and supervision, rests in the state board of education. The authority of administering the affairs of the county district is vested in the county board, which is given greater discretionary powers than formerly. Section 4399-20, Statutes Supp. 1934; Board of Education for Montgomery County v. Messer, 257 Ky. 836, 79 S. W. (2d) 224.

It was the purpose of the educational leaders of the state who framed the new school code to abolish

the office of subdistrict trustee—the evils arising from the administration having become notorious. But the Legislature by amendment kept one such officer in each district and refused directly to exterminate the trustees (Wilson v. Alsip, 256 Ky. 466, 76 S. W. [2d] 288), except that by abolishing the small districts it legislated some out of office and the continuation of others was effectually left to the choice of the governing authorities of the respective counties. While it was provided that the existing boundaries of the subdistricts should not be affected by the act, there was retained the provision of the old law expressly giving the county boards power to change the boundaries, and, when necessary, to establish and unite districts, subject to certain restrictions, and to transfer pupils from one to another school. Whalen v. County Board of Education of Harrison County, 239 Ky. 341, 39 S. W. (2d) 475. In line with the policy of closer concentration, the new act went further and added that a county board should have authority "when necessary * * * to discontinue subdistricts." Ky. Stats. Supp. 1934, sec. 4399-6. The former law (Ky. Stats. sec. 4426-1) provided that no district should be "established or maintained with fewer than fifty children," while the new law declares that "no subdistrict *shall exist* which has less than" that number residing therein. Section 4399-6, Ky. Stats. Supp. 1934.

In Bath county twelve subdistricts were abolished by operation of this statute itself. In the exercise of the authority and discretion it deemed to be vested in it by that same statute, the county board did away with the others. The appellee challenges the power and construes the statute to mean only that by reason of the discontinuance of those small districts the county board could do nothing more than unite districts, rearrange boundaries, and transfer pupils in order that no subdistrict should serve fewer than fifty pupils. The boards previously had those powers. To give the new act that restrictive meaning would be to ignore the addition, "to discontinue subdistricts." That would be violative of the general principle of statutory construction requiring that effect be given all parts of an act, if possible, and that no part may be eliminated or ignored if it can be reasonably harmonized with other provisions. It will not do to say that this interpolation or addition was intended merely to amplify or to define

more fully the power formerly existing. The language was already full and specific. "Discontinue" can hardly be regarded as defining "establish," "change," or "unite." It is antithetic to "establish," and inconsistent with "change" and with "unite" unless all should become one. It augments rather than amplifies. The influence of the general purpose and plan of centralization cannot be ignored. In ascertaining the meaning and intention of a law, the court is not confined to the words, but may look to the spirit and object of its enactment; to the context, subject-matter, effects and consequences, the reason and spirit of the law being called to aid in determining the legislative intent.

Nor can we agree that the retention of the authority in the subdistrict trustees to name the teachers compels the interpretation that there was no intention to permit a sweeping destruction of all subdistricts. The county boards were given the right to choose between alternate systems—the subdistrict or the unified plan. The powers of trustees were otherwise permitted to be destroyed for, as held in Wilson v. Alsip, supra, when grades higher than the eighth are directed to be taught in these subdistrict schools by the county board, the power to name the teacher is taken from the trustee and lodged in the county superintendent. The view expressed in that opinion that the Legislature was unwilling to abolish the trustees or curtail their powers obviously had reference to the refusal to abolish the office and is not in conflict with our conception of the present argument made by appellee. The decision was that whenever the county board should establish a twelve-grade instead of an eight-grade school in his district, the trustee was deprived of his power to name the teacher. Where that was not done, the trustee retained his power. Here when the county board exercised the authority coming from the same source to abolish those districts, the trustee's power to name the teachers was likewise removed. It may not be overlooked that the same power of destruction was previously lodged in the county board if and when it chose to change or consolidate districts. Where conditions in the subdistricts remain as they were, the trustee's authority remains; when the conditions are changed so as to bring the district school into another class, his authority is likewise changed.

Emphasis is placed upon the limitations of the authority of the board by the phrase "when necessary." It is conceded that it is not to be regarded strictly as meaning "indispensable," and that it means if the result would be reasonably useful, convenient, and proper, it lies within the discretion of the board to exercise the authority. Whalen v. County Board of Education of Harrison County, 239 Ky. 341, 39 S. W. (2d) 475. But it is argued that the subsequent action of the board manifests the lack of such reasonable necessity and that there has been in fact no discontinuance of the districts. The evidence is that schools are being maintained in the same places, under the same names, serving the same pupils with the same number of teachers (except in two instances), and in only a few cases were teachers named other than those recommended by the trustees. The county superintendent explained that the action was taken upon the advice of the state school authorities for the sole purpose of making a better school system in the county; that the changes have not been made this year as a matter of present convenience for the children and because of lack of funds, but the board is looking forward to consolidating schools and adding rooms and doing the best that can be done with the available funds. In the Whalen Case, supra, involving the consolidation of schools under the old law, we pointed out that the necessity for such action does not have to exist in each of the subdistricts affected and that it is enough if the action will make for the efficiency and betterment of the county school system. We are not unmindful that these matters must be worked out carefully, deliberately, and perhaps experimentally. Because in the brief period which followed the adoption of the resolution the board has not been able to make changes in the old order, we cannot say that their action was arbitrary. School boards are required by the statute to provide adequate and convenient facilities for the children, and for the elementary grades they must maintain schools within reasonable walking distances (which, of course, denotes a distance reasonably short and a route reasonably safe and convenient) or else furnish transportation for the pupils of that class to the school house.

It has been suggested that the statute in this respect, including section 4399-20 (1934 Supp.), is unconstitutional as being a delegation of legislative power to

the several county boards of education. Such bodies may and do have conferred upon them legislative authority in a degree, for rules and regulations partake of that function. But delegation of legislative power in relation to constitutional limitations means delegation of discretion as to what the law shall be, and does not mean that the Legislature may not confer discretion in the administration of the law itself. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828. Many are the instances where powers more nearly approaching the legislative prerogatives than this have been vested in executive or administrative agencies and sustained as valid. This authority given the school boards is administrative and not legislative, and the act does not offend the Constitution in this regard.

We are of opinion that the action of the school board is valid and that it had the power to name another than the appellee as teacher in the school involved.

Accordingly, the judgment is reversed.

Whole court sitting.