## Huff v. Commonwealth.

(Decided April 25, 1933.)

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment convicting appellant of manslaughter and fixing his punishment at five years' imprisonment.

The facts are these: Dan Morris and Floyd Morris were father and son. A few yards from appellant's home was a tract of timber, which was claimed both by appellant and Press Howard. Press Howard gave the Morrises permission to cut the timber for the purpose of making a mill house. On the morning of February 26, 1932, the Morrises were engaged in cutting the timber, and returned in the afternoon to complete the job. Thereupon appellant came out of his house, called them vile names, and told them to get away from there and quit cutting the timber. After saying, "God damn you, I have just one more time to tell you to stay off my land," appellant went into his home, returned with his gun, and fired two shots, one of which struck and

killed Floyd Morris. No shot was fired by either of the Morrises, and neither of them had a gun. On the other hand, appellant testified as follows: He stepped to his door and requested the Morrises not to cut his timber. Floyd Morris handed Dan Morris a pistol, whereupon he went into the house, got his rifle, came back to the door, and again asked them to leave. Thereupon Dan Morris shot at him with a pistol, and he returned the fire with his rifle, firing two shots as fast as he could. He did not fire at Floyd Morris, but fired at Dan Morris, because Dan Morris was shooting at him. There was further evidence that appellant and the Morrises had had prior difficulties, and that each side had threatened the other.

It is first insisted that the court erred in refusing to permit the witness Press Howard, who had testified that he owned the timber, to answer the question, "Did you know that this timber was on some disputed land between you and George Huff?" The fact that both Press Howard and appellant claimed the timber was fully disclosed by the evidence. What Howard knew about the matter had no practical bearing on the question. Appellant's guilt or innocence depended on whether or not he was the aggressor, and this in turn depended on what occurred at the time, regardless of who owned the timber. Clearly the court did not err in excluding the offered evidence.

Error was also predicated on the refusal of the court to permit the witness John Oliver to answer the question, "Have you heard him on more than one occasion threaten George Huff?" Prior to the question the witness had testified fully as to numerous conversations he had had with the Morrises concerning appellant, and in reply to the question, "Tell the jury whether or not on numerous occasions he threatened George Huff?" had answered, "No, sir." In the circumstances the refusal of the court to permit the witness to answer practically the same question in a different form was not prejudicial error.

Appellant also complains of the court's refusal to permit the witness Clarence Miller to answer the question, "Tell the jury all you saw and all about it." Evidently the objection was sustained on the ground that it called for an answer as to things that the witness himself did not see. However, the witness was not stopped

at this point, but, in answer to other questions, was permitted to go on and tell everything that he saw or heard on the occasion of the homicide. Having gotten the full benefit of all that the witness knew about the homicide, it is not perceived how the rights of appellant were adversely affected by the action of the court.

Another ground urged for reversal is that the court erred in refusing to permit appellant to prove by the witness Robert Eversole that the general moral reputation of the witness Dan Morris, as well as his reputation for truth and veracity, was bad. All that need be said on this question is that, as the exclusion of the evidence was not followed by an avowal as to what the witness would say, appellant is not in a position to complain of the ruling of the court.

Lastly, it is insisted that the self-defense instruction was erroneous. That instruction is first attacked on the ground that, after the words "in order to avert that danger," the court used the words "real or apparent" instead of the words, "real or to the defendant apparent." Inasmuch as the words "real or apparent" were preceded by the words "and the defendant believed and had reasonable grounds to believe, in the exercise of a reasonable judgment that it was necessary to so shoot and kill Dan Morris in order to avert that danger," thus making the right of self-defense turn on what the defendant believed and had reasonable grounds to believe, we do not regard the omission of the words "to the defendant" as fatal to the instruction.

It is further insisted that the right of self-defense should not have been qualified by the following words:

> "Unless you shall believe from the evidence in this case beyond a reasonable doubt that the defendant, George W. Huff first assaulted or brought about the difficulty by assaulting the deceased Floyd Morris or Dan Morris, with a gun, a deadly weapon, and thereby making the danger to the defendant, if any, real or apparent, then in that event you cannot acquit the defendant upon the grounds of self defense or apparent necessity therefor."

If the witnesses for the commonwealth are to be believed, appellant went into his house, got his gun, returned, and fired two shots at a time when he was in no real or apparent danger whatever at the hands of

the Morrises. If that be true, and it being a question for the jury, it cannot be doubted that the qualification of the self-defense instruction was proper.

On the whole, we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.