## Jackson v. Commonwealth.

Jan. 31, 1941.

C. A. Noble and R. T. Moore for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Under indictment charging appellant with the murder of Lillie Mae Huff on February 5, 1940, he was found guilty, the jury inflicting a life sentence. In motion for a new trial which the court overruled, he charged that:

(a) The court erred in admitting incompetent evidence, prejudicially to his substantial rights.

(b) The court failed to give the whole law of the case, and committed prejudicial error in the giving of instructions.

(c) The verdict was the result of passion and prejudice, and not supported by the evidence, and is excessive.

In brief appellant's counsel does not point out any evidence conceived to be objectionable. Under repeated rulings we assume that on appeal objections to admission of evidence which might appear in the transcript, but not pointed out are waived. An inspection of the bill of evidence shows neither objection nor exception.

The facts may be best stated by giving appellant's version, since there were no other eyewitnesses to the acts which resulted in almost instant death. The parties were colored people. Appellant at the time was about 21 years of age; deceased was a woman in middle age. The homicide occurred in the home and place of

business of America Hogg, who in connection with her rooming house operated a dance hall.

Appellant lived at Wheelright, up the Big Sandy. He had there met deceased in August, 1939, at the home of one Bryant, who also operated a dance hall, and where they lived together until October, when they moved to the home of appellant's mother, there remaining until February 4. During these periods appellant and deceased were unquestionably sustaining illicit relations. He testified that during their association they had at one time had a misunderstanding in the Bryant dance hall, at which time she drew a knife on him and undertook to stab him. But they continued relations after moving to the mother's home.

On the night prior to the stabbing, he and a companion started to Lexington, with an idea of later going to Nashville. They arrived in Hazard about 4:00 p. m. and appellant soon went to the place of America Hogg, where deceased was staying. He says he slept that night in the room with Lillie Mae, after he, his traveling companion and Lillie Mae had several drinks. About eight o'clock the next morning the proprietress came into the room and ordered them to get up. They got up and dressed and Lillie Mae left the room first; he followed into the room where she had gone and entered into conversation with Lillie Mae's son. Lillie Mae was sweeping the floor and singing. He says upon signal from Lillie Mae they returned to the bedroom; Lillie Mae drank some more liquor and insisted on appellant taking a drink. She urged appellant to go back to his home taking her, and to abandon his trip to Tennessee. ''About this time she pushed the door as you go in there, and jerked back and had her hand up, and said 'I had rather see you dead than leaving. I will kill you or you will kill me one; if you don't get me I will get you.' It was dark in there; I couldn't see so good; I said 'I wouldn't do that; and she shook her head and I knowed she was mad; I felt for the window, and couldn't jump out, and seen she was by the door, and I run my hand in my pocket and got my knife and commenced cutting her, and she run to the door and pitched out, and went out into the other room. I cut her because I knowed she could handle me; she would have killed me, or I would have to kill her.''

Appellant denied that as he followed Lillie Mae into

the kitchen he stabbed or endeavored to stab her. He says after she had fallen in the dance hall, he saw she was dying, and he leaned over and kissed her, and he and his traveling companion left at once, though he walked into the "arms of the law."

On cross-examination it was developed that when he got to America Hogg's place he found Lillie Mae in company with other men. Appellant admits that he never saw a knife in her hand. It was also brought out that when the two were in bed on the morning of the tragedy they began an argument as to which one was the cause of the trouble between them, and Lillie Mae called out to a man in an adjoining room, "You don't know who is in here with me; Bill Jackson is in here, and then we got up," and shortly thereafter the killing occurred.

The only other witness for accused was his mother, who told of appellant and deceased living together at her home. The importance of her evidence, if any at all, was to the effect that during the time they were there, the two had a quarrel during which Lillie Mae called to her and said: "Miss Goldie, if you don't make Bill let me alone I am going to kill him," and she replied, "I can't do nothing with him, and the best thing I know for you to do is go somewhere and get out of my house." She also saw Lillie Mae with a knife which she carried in her dress pocket. She said that "Lillie Mae was his woman."

America Hogg testified that on the morning when the stabbing occurred she and a helper were in the kitchen, which was between the bedroom and dance hall; she heard Lillie Mae scream, and come hurriedly out of the room; that she ran into the stove, turned from the stove into witness' arms and fell dead in the floor. This witness was positive in her statement that appellant was following Lillie Mae and stabbing at her as she came into the kitchen. She stated that appellant went to the front door of the dance hall and held it shut, apparently for the purpose of preventing any one from leaving the room. A son of the witness at once went out a rear door and called the police.

Neither this witness nor others saw any knife in her hand, nor was any found in the bedroom. The undertaker, who shortly after her death took charge of

her body, found an ordinary pocket knife, unopened, which dropped out of a pocket in some part of her clothing. The undertaker said she had one 3½-inch deep wound just below the collar bone; one in the right breast ranging downward about 3 inches; another in the left side lower down, and one in the left side of the back, and one in the arm and another on the right hand.

The proprietress said that appellant had come to her home some time in the summer prior to the killing, in company with deceased and her daughter, and remained a short while, and that at some later date he came to the home and induced Lillie Mae to return to Wheelright with him. "She cried and said he had come to her and she would go with him." She was unable to say whether or not on the last visit appellant had used his effort to get her to return. Appellant admits that he came to Hazard to see Lillie Mae at a time when her daughter was ill, which must have been some time in November. He denied that he used his effort to get her back to Wheelright, but that she did go back. Several witnesses corroborated the proprietress as to occurrences the night before and on the morning of the homicide; some of them were positive that appellant followed Lillie Mae, either stabbing her, or making effort to stab her. On other points the evidence was corroborative.

As to the contention that the verdict was not supported by the evidence, such is not seriously urged in brief; the argument is reduced to the suggestion that the verdict is excessive, and the evidence at most showed no more than a taking of life in sudden heat and passion, and the punishment, therefore, should have been as provided in such cases, and further suggested that appellant made out a clear case of self-defense. The first argument is based on the ground that the commonwealth failed to show motive for the homicide; that the motive was on the other side, since it might have been well gathered from the proof that Lillie Mae became infuriated at the thought of appellant's purpose of abandoning her and going to Tennessee, and rather than have that situation she endeavored to kill him.

It may be admitted that such a purpose may have been in the mind of deceased; this may be gleaned from appellant's testimony. However, on the other hand,

**318**

there was proof to justify the jury in the belief that appellant was in Hazard for the purpose of inducing Lillie Mae to return to Wheelright and resume their relations, as she had done shortly before the homicide. He does not present any tangible excuse for stopping at Hazard, which he says was incidental, he not knowing that Lillie Mae was there, though he knew she was not at Wheelright, and was accustomed to stop with America Hogg.

We need not spend time or space in discussing the foregoing ground. There was ample proof to sustain a finding of guilt, undoubtedly so since appellant admitted that he killed deceased. Having so admitted, it became incumbent upon him to present such proof to the jury as might convince them that he acted in defense of himself. There are facts shown which would easily justify the jury in its conclusion that he, rather than deceased, was the aggressor. Certainly the facts indicate that he used more force than was apparently necessary to protect himself from death or bodily injury.

Relevant facts formed a basis of motive on the part of appellant, as much so as appellant's proof, analyzed by counsel, manifested motive on the part of deceased to take appellant's life. In fact, referring again to the evidence of the mother of appellant, it was shown by her that shortly prior to the time Lillie Mae left Wheelright she and appellant had quarreled; the mother had ordered deceased to leave. Deceased left, saying she was going to Alabama. Appellant was not present then, but shortly after she left, appellant made inquiry as to her whereabouts, and the mother informed him that she had gone, and he seemed disturbed, and for the first time informed his mother that he was going to Tennessee. "She left on Monday and he left on Tuesday." With this and other evidence, the jury might reasonably infer that appellant feared that he might lose his paramour.

The instructions given by the court were in the usual form and of approved substance, correctly submitting to the jury the law as to murder, voluntary manslaughter, self-defense, and reasonable doubt as to degrees. In fact, while counsel complains that the court did not give the whole law of the case, when he comes to present his argument it is only contended that the instruction on self-defense is fataly defective. We give the instruction in full:

"If you shall believe from the evidence that the defendant, Bill Jackson, at the time he cut, stabbed and wounded the deceased, Lillie Mae Huff, believed, and had reasonable grounds to believe that he was then and there in danger of bodily harm at the hands of the said Lillie Mae Huff, and that it was necessary, or believed by the said defendant in the exercise of a reasonable judgment to be necessary, to cut, stab, wound or kill the said Lillie Mae Huff in order to avert that danger, real, or to the said defendant apparent, then you will find the defendant not guilty, upon the grounds of self-defense and apparent necessity."

The objection is to the use of the words and phrase, "the defendant believed and had reasonable grounds to believe that he was in danger, etc.," because it left to the "jury rather than defendant the decision whether he was in danger of death or bodily harm," and points to Thacker v. Commonwealth, 71 S. W. 931, 24 Ky. Law Rep. 1584, which counsel says was followed with approval in Ayers v. Commonwealth, 195 Ky. 343, 242 S. W. 624.

Counsel does not truly state his objection, based on the cases cited. The Ayers case has no application, since as we read it, and it does cite the Thacker case, the objection was to the failure of the court to leave the question of belief of danger, to the accused rather than to the jury. The instruction here did not leave the question of belief to the jury, but left it to the defendant; to be determined from his viewpoint. Apparently what counsel is endeavoring to complain of is the failure of the court to incorporate in the sentence quoted, after the use of the words "reasonable grounds," the words "either real or apparent." This was the situation in the Thacker case, as was true in Martin v. Commonwealth, 78 S. W. 1104, 25 Ky. Law Rep. 1928.

One of the cardinal rules in construing instructions is that they must be read as a whole, and that all parts of any one instruction must be thus read in order to ascertain the meaning and import; it is not proper to take up one sentence or phrase and consider it without reference to the whole of the instruction. Citations are unnecessary.

When we apply that rule to the instruction in ques-

tion, we are convinced that no error was committed since the court in another part of the instruction, following the language above referred to, said:

"And that it was necessary or believed by the said defendant in the exercise of a reasonable judgment to be necessary to cut, stab and wound or kill the said Lillie Mae Huff in order to avert *that* danger, real or to the said defendant apparent, then you will find the defendant not guilty upon the grounds of self-defense and apparent necessity."

The effect of the language used was to apprise the jury that they could acquit on the grounds of self-defense, if the danger to appellant was real or to him apparent. In other words, the language used in the latter part related to the danger mentioned in the forepart of the instruction. In the case of Cole v. Commonwealth, 260 Ky. 554, 86 S. W. (2d) 305, 308, it was complained that an instruction on the subject of voluntary manslaughter was erroneous because, in submitting the question to the jury, the words "apparently necessary" were not followed or preceded by the words "to the defendant." We pointed to the instruction on self-defense which told the jury that appellant's right to act was based on the exercise of a reasonable judgment in order to avert the danger, real or to the defendant reasonably apparent. Following the rule above mentioned, we held that the use of the words "to the defendant," as used in the self-defense instruction, cured the omission of the words in the manslaughter instruction. We found there, as we find here, that the omission of the words from the portion of the instruction criticized, but elsewhere incorporated, was thereby cured. As we indicated in the Cole case, the jury could not have been here misled, and it was made apparent to them that they should apply the self-defense law, if they believed that defendant reasonably acted to avert the danger "real or to the defendant reasonably apparent." The rule of construction was applied in curing a somewhat similar claimed defect in an instruction in Huff v. Commonwealth, 248 Ky. 700, 59 S. W. (2d) 985.

A reference to Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239, will show that we approved an instruction in language similar to that used in the instant case; likewise in Carnes v. Commonwealth, 146

Ky. 425, 142 S. W. 723; Page v. Commonwealth, 255 Ky. 282, 73 S. W. (2d) 23, and in other cases cited in Stanley's Instructions, 891, p. 1188.

We have reviewed the case even to the extent of making examination of one question raised on motion for a new trial, not argued in brief, as well as those presented in argument, and fail to find any semblance of error. As we view the whole record, we are concluded that appellant received a fair and impartial trial.

Judgment affirmed.