## Goodpaster, Director of Insurance, v. Foster et al.

Feb. 11, 1944.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellant.

Kelly Francis and Clay & Clay for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

On the second appeal of this case we are met squarely with the question, whether the Legislature could delegate to the State Auditor, and thereafter to the Division or Director of Insurance, the power to enact, under the guise of a "Standard of Safety," a law prohibiting the operation of a moving picture theatre in a building, the main floor of which is more than four feet above the adjoining grade level. It becomes necessary to decide this question because, following our direction to the Chancellor to overrule the demurrer to the petition (Foster et al. v. Goodpaster, etc., 290 Ky. 410, 161 S. W. (2d) 626, 140 A. L. R. 1044), the defense interposed by pleading and proof was in substance that the Standards of Safety adopted by the Division of Insurance in 1937 and in 1941 contained the prohibition, which fact rend-

ered it unnecessary to introduce evidence that the motion picture theatre operated by appellees' lessees was unsafe in any other particular than its location on the second floor, and futile to grant appellees time in which to remedy the conditions, since it was conceded that they owned only the second floor of the building and could not utilize the ground floor. Appellees, in their brief on this appeal, waived the insufficiency of the hearing following which the order closing the theatre was issued, recognizing the fact that if the Standard of Safety in question is a valid enactment, the appellant could eventually accomplish his purpose to close the theatre by giving a proper notice and conducting a formal hearing, since it is impossible to move the theatre to the ground floor. Their main contention is that the order closing the theatre was arbitrary in view of the theatre's long history of safe operation, their compliance with every previous requirement of the authorities, and the approval theretofore given by the Director of Insurance of the safety measures taken by them to prevent fire.

The Chancellor construed our opinion on the former appeal to mean that we regarded the regulation prohibiting the operation of a moving picture theatre on the second floor of a building as arbitrary, and accordingly, on the final hearing, granted appellees the injunction sought. In thus interpreting our opinion, he was in error, since the Standards of Safety adopted by the Division were not before us on the former appeal. We reversed the judgment solely because its nceessary effect in the light of the untraversed allegations of the petition was to deny a litigant an appeal to the courts from a confiscatory order of an administrative agency, entered without a proper hearing and without opportunity to the aggrieved property owner to remedy the conditions which the agency asserted justified the order and the owner alleged he was willing and able to remedy. Moreover, we cannot say that to prohibit the operation of a moving picture theatre on other than the ground floor of a building would be an arbitrary exercise of the State's police power. True, the right of the owners to utilize their property for the conduct of a moving picture theatre is a vested right protected by the Federal Constitution from impairment by subsequently enacted legislation, such as zoning ordinances (Darlington v. Board of Councilmen of the City of Frankfort et al.,

282 Ky. 778, 140 S. W. (2d) 392); but even a vested right must yield to the power of the State to protect its inhabitants from the peril of fire. 12 C. J. 916, 16 C. J. S., Constitutional Law, sec. 184.

As stated in our former opinion, the Act (KS 762b-6 to 762b-24, inclusive, now embraced within Chapter 227, KRS 227.010 to 227.990, inclusive) confers no express authority upon the Division of Insurance, or its Director, to close a theatre or public building. But the Act does authorize the Director

"(a) To declare and prescribe what protection, safeguards or other means or methods will be best adapted to render any such building safe as required by law, ordinances or lawful orders.

"(b) To fix such reasonable standards, and prescribe, modify and enlarge such reasonable orders for the adoption, installation and maintenance of equipment, safeguards and other means or methods of protection as nearly uniform as possible, as shall be necessary to carry out all laws, ordinances and lawful orders relative to the prevention of such fire loss.

"(c) To fix and order such reasonable standards for the construction and maintenance of such buildings as shall render them safe from such fire loss.

"(d) To require the performance of any other act necessary for the prevention of such fire loss."

To hold that the Legislature did not intend to confer upon the Director the power to enact any law or requirement he deemed necessary for the prevention of fire loss, would be to ignore the scope of the general terms employed in the above quoted and other portions of the Act and to shut our eyes to the realities. Since we do not choose to follow this course, it becomes necessary, as indicated at the outset of this opinion, to decide whether the Legislature could delegate to the Division of Insurance, or the Director, the power to enact the prohibitory requirement which we have italicized in the following quotation from the Standards of Safety adopted by the Division in 1937;

"4. Motion Picture Theatres.

"In addition to the foregoing requirements for theatres the following additional requirements shall ap-

ply in motion picture theatres, auditoriums, lecture rooms and other locations where flammable, nitrocellulose films are shown.

"(a) General. No motion picture machine shall be installed, maintained or operated in any building that does not abut directly upon a street; nor shall any such machine be installed, maintained or operated in connection with any exhibition room contained in a building occupied as a hotel, tenement house, or lodging house; nor in factories, storerooms, or workshops, except where the exhibition room and motion picture machine are separated from the rest of the building by unpierced fireproof walls and floors; *and in no case shall the main floor of such exhibition room be more than four feet above or below the adjoining grade level.* To overcome any difference of level on the ground floor, gradients shall be employed of not more than one foot in ten feet; no steps shall be permitted. Exit door must be at the same level as the sidewalk. This does not prohibit the exhibition of motion pictures in connection with lectures or occasional entertainments, etc. above the first floor in any fireproof building, provided suitable exits are available and the regulations governing the operation of motion picture machines as set forth in these standards are observed.

"The foregoing shall not apply to the use of approved machines using acetate film, marked safety film, in lecture rooms, auditoriums, schools, etc.

"All electric wiring throughout the entire building including stage section and motion picture booth shall be installed in approved rigid conduit."

To state the proposition, it seems to us, is to answer it. The assertion, "Ours is a government of laws and not of men" became hackneyed in the early days of the Republic, and while it is no longer accepted by all as a truism, it nevertheless expresses a fundamental principle of our form of government. It will become but a memory if those elected to make the laws may delegate that power to others not of the people's choice. As said by this Court in the case of Bloemer et al. v. Turner, 281 Ky. 832, 137 S. W. (2d) 387, 390:

"The trend of the last two or three decades toward paternalistic control and regulation of commercial transactions, nurtured by increasing complexity of life and

business, has raised serious and difficult questions of delegation of governmental power to administrative agencies. As recently observed, 'Administrative boards and commissions have undoubtedly become an essential part of our governmental structure. That there are both advantages and disadvantages inherent in the system is admitted.' Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S. W. (2d) 821, 824. But neither wisdom of policy nor demands of expediency, nor both, should be allowed to lead the courts away from basic constitutional processes, or sound judicial construction of statutory authority. There is danger in a departure from the fundamental doctrine that 'Ours is a government of laws and not of men.' This concept is clearly expressed in the Constitution of Kentucky. The legislative power is 'confined to a separate body of magistracy,' namely, the 'General Assembly of the Commonwealth of Kentucky.' Section 27, 29, Kentucky Constitution. Accentuating this cardinal principle of our republican form of government, with its general limitations of power in those who may be chosen to govern, is Section 60 of the Kentucky Constitution that (excepting referenda on certain specified public questions), 'No law * * * shall be enacted to take effect upon the approval of any other authority than the general assembly, unless otherwise expressly provided in this Constitution.' We have held ineffective or void several statutes dependent upon the contingent action of an individual. * * * If it may not make the effectiveness of a specific act dependent upon the will of another, certainly it may not delegate to another the power to enact a law, whether in form or effect. We do not, of course, have reference to municipalities, for which express provision is made, or to empowering administrative boards to adopt rules and regulations and perfect the details of a plan, the general outlines of which have been laid down in a statute. 6 R. C. L. 179.''

The Attorney General representing the appellant does not even contend that the Standard of Safety which we have quoted is a rule or regulation of the type which we held in the Bloemer case, supra, an administrative agency might be deputized to enact. Indeed, he could not well have done so in view of its sweeping and confiscatory effect and the absence of any standards or limitations fixed by the Legislature for its operation. His arguments, unsupported by the citation of

authority, are that since the State may delegate to municipalities the power to enact ordinances, by analogy it may likewise delegate similar powers to the Director of Insurance; and that neither the Standard of Safety in question nor the act of the Director thereunder, was arbitrary. But in making these arguments, he overlooks the distinction which exists between constitutionally authorized municipal legislative bodies and adminstrative boards heretofore attempted to be pointed out, and the fact that the crucial question in this case is not whether the regulation referred to contains provisions beyond the power of the Commonwealth to enact through its duly constituted legislative bodies, but whether such provisions may be enacted by an administrative agency.

In denying appellant the power claimed by him, it is not necessary to dwell upon the facts out of which this litigation arose since they are set forth in our former opinion and the present appeal presents for determination only a question of law. However, they afford an illustration of the disastrous effect upon property rights which may result from the indiscriminate enactment and enforcement of prohibitions of the character discussed.

Judgment affirmed.

Whole Court sitting, except Judge Rees.