# Dicken et al. v. Kentucky State Board of Education.

February 21, 1947.

W. B. Ardery, Judge.

Daniel W. Daviess and Thos. D. Hirschfeld for appellants.

Eldon S. Dummit, Attorney General, Marvin J. Sternberg, Assistant Attorney General, and Howell W. Vincent for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At its regular session in 1934 the Legislature of this Commonwealth enacted Chapter 65 of the published acts for that year. It superseded all preceding statutes for the creating, management and enforcement of our free public school system; imposing certain duties on the State Superintendent of Public Instruction; creating the State Board of Education with the State Superintendent of Public Instruction, by virtue of his office, made chairman thereof, and describing the qualifications for the other members of that Board, who were required to be professional educators. It provided for the conduct of common public schools up to and including the eighth grade, and for higher classes of school for instruction of pupils eligible to enter the four higher grades, 9, 10, 11 and 12. It also provided that counties outside of independent school districts to be county educational units and to be managed and governed by county boards of education, and for the election of members thereof.

Many other provisions are therein made relative to, and deemed feasible by the Legislature for acquiring free education to eligible pupils (which eligibility was also defined) of the youth within the territory to be served.

Parts of that enactment are now sections 156.160 and 158.100 of KRS. The first one (156.160) authorizes the Superintendent of Public Instruction, with the approval of the State Board of Education, to prescribe:

"Rules and regulations for grading, classifying and accrediting all common schools, and for determining the scope of instruction that may be offered in the different classes of schools, and the minimum requirements for graduation from the courses offered;"

Other provisions of that section direct the same agency to prescribe rules for other matters relating to the efficiency of the system and the general purpose of the act. The second section supra (158.100) prescribes in its subsection (1) that:

"Each county school district shall provide at least an approved twelve-grade school service. An approved eight-grade service for all pupils residing in the district shall be provided by maintaining the schools or by contract with another district. An approved high school service for all children of high school grade under twenty-one years of age residing in the district shall be provided either by maintaining the schools within the county or by contract with an independent district within the county."

In its subsection (2) is this provision:

"Each independent school district shall provide at least an approved twelve-grade school service. An approved eight-grade school service shall be provided for the white children residing in the district by maintaining schools. An approved eight-grade service for colored children residing in the district shall be provided either by maintaining the schools or by contract with another district. * * *"

The next subsection of that section prescribes that if the number of pupils of high school grade below 21 years of age in any county is not sufficient to maintain

a high school therein, then the Board (county) "shall provide high school service by contract with another county or independent district that maintains an approved high school, and shall furnish daily transportation to the high school, or in lieu of transportation shall provide for the board and room of the pupil within reasonable walking distance of such school if it is found more feasible or more economical" not exceeding $100 per annum for any one pupil.

Prior to the 1934 act a class "B" high school had been established at California in Campbell County, Kentucky, known as the A. J. Jolly High School, and it was operated as such until the order abandoning it duly made and entered by the Kentucky State Board of Education followed by the same order made by the Campbell County Board of Education; but in the abandoning order by the State Board of Education the school was permitted to continue as a high school teaching grades 9, 10, 11 and 12 throughout the remainder of the school year 1945-46 during which time it was classified as a temporary high school. It is shown by the records in this case that it never had an attendance to the minimum number of 60 pupils for the sustaining of a high school. It appears to be so admitted by the petition and likewise by a statement or report by the Kentucky Association of Colleges and Secondary Schools (formerly known as the Kentucky Association of Colleges) which consisted of a group of some twenty-odd members of educators. The purpose of that Association was and is to aid and assist the State Board of Education to so conduct the state's public schools as to enable graduates from Kentucky high schools to enter colleges throughout the country (U. S.) without having to take entrance examinations.

Pursuant to its rule making power so authorized, the State Superintendent with the approval of the State Board of Education promulgated this rule with reference to high schools:

"Four-year high schools (grades 9-12) shall employ at least three full-time teachers and have a bona fide enrollment of not fewer than sixty pupils."

The rules which the State Board of Education promulgates and adopts are uniform throughout the state

and to be observed and followed by all county boards of education.

The attendance of high grade pupils in the area of the A. J. Jolly school was (as above stated) considerably less than 60 pupils in the school year of 1945-46, and the State Board of Education so notified the county board of education of Campbell County. At a meeting later held, after such notification, between the state and county boards of education, with perhaps some of the patrons of the A. J. Jolly High School present, it was determined by the State Board that the A. J. Jolly High School might continue for the remaining portion of that scholastic year, designating it as class "B T" high school, the letter "T" indicating that it was only temporary for the remainder of that year, and that thereafter the high school at that location should be abandoned and that the high school pupils theretofore attending that school should be transferred to the class "A" high school at Alexandria, located in the same county and 12 miles distant from the A. J. Jolly School and where the faculty consisted of eleven members. That determination, therefore, required that thereafter, beginning with the scholastic year 1946-1947, the high school pupils in the A. J. Jolly area would be entitled to free transportation to Alexandria.

On July 10, 1946, before the commencement of the scholastic year of 1946-47, a number of patrons of the A. J. Jolly High School filed this action in the Franklin circuit court against the Superintendent of Public Instruction, the members of the State Board of Education, the Campbell County Board of Education, and its members, and all other individuals and agencies having duties to perform in carrying out the provisions of the statute and rules promulgated pursuant thereto relating to the establishment and maintenance of high schools in the various counties of the Commonwealth and their abandonment, or their discontinuance at their former operating locality, and prescribing for the transfer of the pupils to other like schools in the county or like schools in adjacent school units or districts for which the county board of education had made provision by contract or otherwise where no high school had been established in the county.

Plaintiffs prayed for a declaration of rights, to be followed by a mandatory injunction against the County Board of Education (which had theretofore entered an order abandoning the A. J. Jolly High School) and its members requiring them to continue to provide for and maintain the A. J. Jolly High School that had theretofore been established in California. The petition charged that the order of abandonment of that school was both arbitrary and without authority possessed by either the State Board of Education or the County Board of Education. Other local conditions were also alleged in the petition which plaintiffs conceived to be of material effect, but which we conclude otherwise, thus leaving the only question of possible substance for the relief sought, the validity of the rule supra adopted by the State Board of Education requiring an enrollment "of not fewer than sixty pupils" that a high school should have in order to operate as such. Defendants', and appellees', demurrer filed to the petition was sustained by the trial court, and upon plaintiffs declining to plead further their petition was dismissed, from which they prosecute this appeal.

Plaintiffs appear to admit in their brief, filed in this court that pursuant to authority conferred by KRS 156.160 the State Board of Education may make rules for the governing, classifications, etc., of the public schools of the Commonwealth which do not infringe upon pure legislative authority, but they insist that the rule herein attacked fixing a minimum of pupil attendance to maintain a high school is the exercise of a legislative function by the State Board of Education which section 28 of our Constitution expressly forbids. Section 27 of that instrument divides the powers of government into three departments, the Legislative, the Executive and the Judicial, and section 28 prescribes that "no person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Since we regard this contention as the only one deserving consideration, all of the other grounds and arguments made by learned counsel for appellants will be dismissed as immaterial and valueless for the obtention of the relief sought.

A late case cited by appellants, and largely relied on to sustain their contention, is that of Bloemer v. Turner, 281 Ky. 832, 137 S. W. 2d 387, 390, involving the right under statutory authority to make rules and regulations governing the administration of the statute there involved of the Director of the Kentucky Agricultural Experiment Station, to add to what the label on a package of dog food should contain by annexing an additional requirement. The statute enumerated the specific facts that should be put upon the label of the package containing the dog food, but the administrators of the act attempted to add an additional requirement to be so stated, which it was insisted could be done under conferred authority to regulate. The trial court sustained that contention, but we reversed the judgment and held that the added requirement was a legislative act and not a regulatory one. In doing so we said that if the delegated authority to the administrative agency were authorized to add to the specific requirements contained in the statute, then the same agency could likewise take from the specific requirements of the statute, or, we may add, such administrative authority might dispense entirely with such specific statutory requirements, which would logically and essentially be legislative action. There is here presented for our determination no such question as was involved and determined in that case. However, it was observed in that case that:

"The trend of the last two or three decades toward paternalistic control and regulation of commercial transactions, nurtured by increasing complexity of life and business, has raised serious and difficult questions of delegation and governmental power to administrative agencies. As recently observed, 'Administrative boards and commissions have undoubtedly become an essential part of our governmental structure. * * *.' "

Further along in the same opinion we approvingly inserted this excerpt from the Pennsylvania Supreme Court in Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government.

There are many things upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' ''

Finally, in stating the ground of our conclusion that the added requirement made by the administrative agency in that act was legislation and not regulation, we said in the Bloemer opinion:

''The General Assembly deemed it to be legislation to prescribe the contents of the label. It did so itself. We suppose no one would contend that the Director of the Agriculture Experiment Station, or any other agency, could detract from the stipulated provisions, e. g., rule that the net weight of the contents of the package need not be printed on the label. If he may not by regulation subtract, then he may not by regulation add.''

Other domestic cases more or less substantiating the right of the State Board of Education to classify the grading of free public schools are, Wilson v. Alsip, 256 Ky. 466, 76 S. W. 2d 288; County Board of Education v. Goodpaster, 260 Ky. 198, 84 S. W. 2d 55; Board of Trustees v. State Board of Education, 269 Ky. 253, 106 S. W. 2d 985, and Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S. W. 2d 821. We content ourselves with only a citation of those cases without inserting excerpts therefrom, but in each of them there was presented the same question as to what acts of administrative agencies were permissible under the power of ''regulation,'' and which were purely legislative in character.

The 1934 school code is a comprehensive statute, in the enforcement of which a number of administrative agencies are provided, each of which necessarily requires the performance of a multiplicity of duties so as to accomplish the purpose of the Legislature in enacting it, which was to construct, and administer the most efficient formula for the education of the school children of the Commonwealth. The Legislature fixed therein the classes of the schools provided for, and enacted that the four grades following the eighth should be considered as what are commonly understood as High Schools, and required that each county board should maintain or make

provision for at least one high school in its county district, but did not restrict the number of them that might be established therein. The very fact that the statute expressly required only one of such schools to be established is an indication that the members of the Legislature realized the fact that such high schools could not be established in every community where there was a small number of high school pupils located in the particular area. It, therefore, left it to the State Board of Education, under its authorized power to make rules, classifications, etc. to fix the minimum number of pupils necessary for the maintenance of a high school, and which we conclude was permitted regulation instead of a delegation of legislative authority.

The Bloemer case supra points out the difference between the Federal Constitution and our Constitution with respect to officials of one department of the Federal government (which the United States Constitution divides into the same department as does our Constitution) exercising authority properly within another department; but that instrument does not contain *express* inhibition of officers of one department exercising powers properly belonging to another of the three divisions as is done by section 28 of our Constitution, and which constitutes the only difference in the two Constitutions on the question under consideration. Nevertheless such difference does not affect the question as to what is, or is not, a regulatory provision or a legislative provision.

The Supreme Court of the United States in the case of Louisville Bridge Company v. United States, 242 U. S. 409, 37 S. Ct. 158, 162, 61 L. Ed. 395, was presented with the same question relating to the construction of a bridge across the Ohio River, a navigable stream. The Congressional Act authorizing such construction required, in substance, that the bridge so authorized should not *unreasonably* obstruct navigation, but it provided no specific plans or standards as to what was or was not "unreasonable obstruction" to navigation, and delegated the authority to the Secretary of War to make such standard. In the course of the opinion the court, speaking by Mr. Justice Pitney, said:

"Congress thereby declared that whenever the Sec-

retary of War should find any bridge theretofore or thereafter constructed over any of the navigable waterways of the United States to be an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, it should be the duty of the Secretary, after hearing the parties concerned, to take action looking to the removal or alteration of the bridge, so as to render navigation through or under it reasonably free, easy, and unobstructed. As this court repeatedly has held, this is not an unconstitutional delegation of legislative or judicial power to the Secretary.'' (Citing authorities.)

The line separating that which is purely regulation, and that which is purely legislation, is necessarily indistinct, and becomes more so as the line separating such authority is approached. Therefore, courts, when no more than a doubt exists as to which side of the separating line the act in question falls, will resolve the doubt in favor of the validity of the act rather than holding it invalid, which is analogous to the well established rule that a mere doubt as to the constitutionality of a statute will be resolved in favor of its validity rather than its invalidity, and which is especially true when the act is essential and necessary for the carrying out the broad purpose and intent of the Legislature. We therefore conclude that the petition was insufficient to the relief sought therein, and that the court properly sustained a demurrer to it and dismissed it after plaintiff declined to plead further.

Wherefore, the judgment is affirmed.