Susan **HOHNKE**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 20, 1970.

Dissenting Opinion Feb. 27, 1970.

Roger B. Sledd, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

The appellant was convicted of the offense of unlawful possession of "LSD," and her punishment was fixed by the jury at confinement in the penitentiary for two years and a fine of $1. On this appeal she seeks reversal on the following grounds: (1) Possession of LSD was not unlawful in Kentucky; (2) the trial court improperly submitted to the jury the issue of the voluntariness of the appellant's consent to the seizure of the capsule containing LSD by a federal agent; (3) the court erred in receiving evidence obtained by a search of the appellant's premises, because she did not volunteer to any search and no search warrant was obtained; (4) the failure of the federal agent to warn appellant of her right to advice of counsel until after she had given him the capsule containing LSD violated her constitutional right to counsel; and (5) excessive prejudicial newspaper publicity deprived appellant of a fair trial.

The appellant was employed by the University of Kentucky Medical Center as a research assistant. She had been in that employment about four years prior to October 10, 1966, the day on which the opening events of the present case occurred. On

that day just after lunch, the appellant was called to the office of Dr. Isbell, then the acting chairman of the Department of Medicine at the University of Kentucky Medical Center. Albert Cook, an enforcement agent of the United States Bureau of Narcotics, was in Dr. Isbell's office when the appellant arrived. He was identified to her in his official capacity and disclosed that he was conducting an investigation involving "marijuana, mescaline, and LSD." Cook said he advised appellant that "anything she would discuss with me would be of her own free will, I was not going to force her into any conversation, and I must say she was most cooperative." There followed a general discussion in which Dr. Isbell, Agent Cook, and the appellant participated for an hour or longer. According to the version for the Commonwealth, the appellant voluntarily disclosed that she had a vial containing LSD capsules at her home. Dr. Isbell, the federal agent, and appellant traveled to appellant's home in Dr. Isbell's automobile, and appellant unlocked the door of her residence and admitted Dr. Isbell and Cook and presented to Cook the vial containing about eighty LSD capsules. The appellant signed a consent-to-search form presented to her by Cook, after which she and the two men returned to Dr. Isbell's office and had some further conversation.

Although there is some dispute about it, it seems clear that Cook did not advise appellant respecting any of the "Miranda rights" (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) until after he had obtained the capsules and the parties had returned to Dr. Isbell's office.

An analysis of the material in the capsules disclosed it to be LSD (lysergic acid diethylamide). About two weeks after her interview in the office of Dr. Isbell, appellant was discharged as an employee of the University and arrested on a warrant charging her with violation of KRS 218.020 which provides:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter."

The term "narcotic drug" as used in KRS 218.020 is defined by KRS 218.010(14) which we quote:

" 'Narcotic Drugs' includes coca leaves, opium, isonipecaine (the substance identified chemically as 1-methly-4-phenylpiperidine-4-carboxylic acid ethyl ester, or any salt thereof by whatever trade name identified), cannabis, every other substance neither chemically nor physically distinguishable from them, and any drug having an addiction-forming or addiction-sustaining liability similar to morphine or cocaine which is designated by regulation of the State Board of Health as a narcotic drug."

On July 22, 1966, the State Board of Health promulgated in due form a regulation designating lysergic acid diethylamide (LSD) as a narcotic drug. The regulation became effective before the date of the offense for which the appellant has been convicted.

In her first assignment of error, the appellant contends that there was no valid law in Kentucky prohibiting possession of LSD on the date she is charged with possessing it. She premises this assault upon her conviction on a twofold front: (a) Kentucky Constitution Sections 27 and 28 forbid the delegation by the General Assembly to the State Board of Health of the power to enact criminal statutes in Kentucky, and (b) even if it is determined that the delegation provided by KRS 218.010 (14) is valid, the State Board of Health acted beyond the scope of the enabling statute in declaring LSD as a "narcotic drug," because LSD does not possess "addiction-forming or addiction-sustaining liability similar to morphine or cocaine."

In support of proposition (a) that the Kentucky Constitution prohibits the delegation of the Legislature's power to enact criminal statutes, the appellant relies upon McCown v. Gose, 244 Ky. 402, 51 S.W.2d

251; Bloemer v. Turner, 281 Ky. 832, 137 S.W.2d 387; Goodpaster v. Foster, 296 Ky. 614, 178 S.W.2d 29; Dicken v. Kentucky State Board of Education, 304 Ky. 343, 199 S.W.2d 977; and Robertson v. Schein, 305 Ky. 528, 204 S.W.2d 954. Without undertaking a detailed analysis of the cited cases, none of which may be regarded as completely apposite, it is appropriate to note that Butler v. United Cerebral Palsy of Northern Kentucky, Inc., Ky., 352 S.W.2d 203, recognized that much of the language employed in the decisions dealing with delegation of legislative authority is inaccurate and inapplicable in determining whether a particular act of the Legislature runs afoul of constitutional proscriptions against delegation of authority. As noted in Butler, many of the cases advert to the necessity for "standards" when the real need is not for standards but for safeguards. In Commonwealth v. Moyers, Ky., 272 S.W.2d 670, this court upheld the validity of a regulation of the Department of Fish and Wildlife Resources prohibiting possession of certain types of fishing equipment.

■ The General Assembly denounced possession of any narcotic drug by KRS 218.020 and prescribed a penalty for violation by KRS 218.210(2) (a). By KRS 218.010(14) the Legislature defined narcotic drugs and specifically recognized that in this day of rapid scientific developments other substances could and probably would appear in the market which would need to be regulated. By entrusting the State Board of Health with the duty of keeping abreast of the narcotic drug menace, the Legislature adopted a course peculiarly proper and expedient in the complicated responsibilities of governmental activities. There can be no doubt that the Legislature fixed adequate "standards" by which the State Board of Health must be guided in carrying out the functions committed to it by KRS 218.010(14). We find no merit in (1) (a) of the appellant's assertions of error.

The more difficult question arises as respects appellant's contention (1) (b), the substance of which is that the State Board of Health exceeded the authority granted to it by KRS 218.010(14), because LSD is not a drug "having an addiction-forming or addiction-sustaining liability similar to morphine or cocaine."

On April 13, 1967, the appellant moved the court to dismiss the indictment for unlawful possession of LSD "for the reason that same is not in violation of any of the laws of the Commonwealth of Kentucky as properly enacted and that the statute is in violation of the Fifth and Fourteenth Amendments of the United States Constitution." On April 15, 1967, the trial court overruled the motion to dismiss the indictment, pointing out that the regulation of the State Board of Health designating LSD as a narcotic drug was adopted pursuant to KRS 218.010(14) and that the state possesses broad powers to regulate the traffic of narcotic drugs within its borders. On April 25 another motion to dismiss was filed in which the court was requested to dismiss the indictment on the ground that: " * * * the drugs allegedly found in the possession of the defendant are not narcotic drugs and have no addiction-forming or addiction-sustaining liability similar to either morphine or cocaine and, therefore, the State Board of Health had no authority to determine LSD * * * [a] narcotic drug."

The case was assigned for trial on July 24, 1967, and the parties began the qualification of jurors. On the next day, and before the proceedings to seat a jury had been completed, the appellant moved the court to set a date for a hearing at which she would introduce evidence "as to the nature and qualities of * * * LSD * * * for the purpose of determining whether the State Board of Health properly acted in determining" LSD to be a narcotic as defined by statute.

The court denied appellant's motion for opportunity to present evidence respecting

the nature and qualities of LSD and further recited in the order denying that motion: "And the defendant proffered the evidence by avowal and the evidence was refused by the court." It appears that the order just mentioned was entered while the parties were still in the process of selecting a jury.

This brings us face to face with the question of whether reversible error was committed in denying appellant the opportunity to present evidence, even by avowal, pertaining to the qualities of LSD and looking toward demonstrating that it does not have the qualities prescribed for narcotic drugs by the statute. It may not be doubted that a judicial review to test the validity of an administrative regulation *must be afforded to satisfy the demands of* due process. A leading case dealing with the matter is Yakus v. United States, 64 S.Ct. 660, 321 U.S. 414, 88 L.Ed. 834. There is no administrative procedure for review of the action of the State Board of Health in KRS Chapter 218. Neither does that chapter outline any process for judicial review of the State Board of Health's actions. As observed in 73 C.J.S. Public Administrative Bodies and Procedure § 104(c), page 425:

"Where a rule or regulation of a public administrative agency is within the scope of the authority of such agency it is considered prima facie, or presumptively, valid and reasonable, and the one who raises the question has the burden of pleading and proving facts showing the invalidity of such rule or regulation. Moreover, the invalidity of an administrative rule or regulation must be made so manifest by the one attacking it that the court has no choice except to hold that the administrative agency has exceeded the authority delegated. Thus he must show that such rule or regulation is clearly inconsistent with statute, or that it is clearly unreasonable, or that it is clearly inappropriate to carry out the end specified in the statute it is intended to implement."

The defense which appellant sought to present was properly a preliminary defense presentable by motion. RCr 8.12–8.18 inclusive. The preliminary motion was properly made, and it was pursued by an offer of evidence. The trial court obviously regarded the matter as completely settled and not subject to attack; hence, the court's ruling that no evidence could come into the record even by avowal. It seems plain that the court's decision was not based on lack of timely offer of such proof.

Does LSD possess "addiction-forming or addiction-sustaining liability similar to morphine or cocaine"? The General Assembly empowered the State Board of Health to designate any drug possessing those characteristics as a "narcotic drug." There was no legislative grant of authority to so designate any drug *not* possessing those qualities. If a given drug possesses those qualities, the Board is empowered to designate it as a "narcotic drug," the possession of which is made felonious by KRS 218.020. On the other hand, if a drug does *not* possess those qualities, no matter how nefarious it may be, the Board has no power under KRS 218.010(14) to designate it as a "narcotic drug."

The characteristics of LSD, from a scientific viewpoint, are not so well established as to bring them within the realm of common knowledge subject to judicial notice. When the trial court denied the appellant the opportunity to adduce evidence, even by avowal, relating to this vital question, any vestige of judicial review was foreclosed. Clearly, no "due-process" hearing or judicial review may be found in a proceeding in which even the opportunity for avowing evidence on such a crucial point is summarily denied.

It is clear that the trial judge deemed the action of the State Board of Health as utterly determinative and final. It was his view that the appellant had no standing to question the Board's designation of

LSD as a "narcotic drug" even though she stood charged with felonious possession of it. The basis for the trial judge's ruling in respect to this matter is pointed up by this excerpt from the transcript:

"Q. Doctor, in your opinion is LSD a narcotic drug?

[Objection by Commonwealth]

THE COURT: I'll sustain the objection. That doesn't enter into this question at all. The law, as I have stated before, is what the State has said, and that doesn't make any difference."

We do not suggest that the appellant could have sought a jury determination as to the characteristics of LSD. We do say that she was entitled to show to the court, if she could present evidence of it, that the Board's action in designating LSD as a narcotic drug was illegal, because the Board had no basis for making such a determination within the statutorily prescribed definition of "narcotic drugs."

It is somewhat significant that the State Board of Health specifically removed LSD from classification as a "narcotic drug" by subsequent regulation. The General Assembly adopted a "Dangerous Drug Act" in 1968. KRS 217.721 to 217.785. By the terms of that Act, LSD was denominated a "dangerous drug." KRS 217.725(3) (a). The General Assembly pointedly recognized that differences exist between truly "narcotic drugs" and "dangerous drugs," as is evidenced by the language of KRS 217.725(4) in defining "Dangerous Drugs":

"Any drug which contains any quantity of a substance which has been designated by regulation of the State Board of Health as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect; *except that the Board shall not designate under this law any substance that is a narcotic drug as defined or designated in the Kentucky Uniform Narcotic Drug Act or the regulations promulgated thereunder.* (Emphasis added.)

KRS 218.010(14) is a part of the Uniform Narcotic Drug Act to which the just-quoted statute refers. KRS 218.240. In compliance with KRS 217.725, the State Board of Health removed LSD (and some other drugs) from the list of "narcotic drugs" and in so doing noted:

"The drugs specified above [LSD was one] in this regulation are being removed from their designation by the State Board of Health as 'narcotic drugs' because they have been designated by law as 'dangerous drugs' effective July 1, 1968, under the provisions of House Bill No. 347, 1968 Acts of the General Assembly [KRS 217.721 to 217.-785 and 217.995] and hence on and after July 1, 1968, will be regulated pursuant to the provisions of [KRS Chapter 217]."

Presumably the General Assembly knew that the State Board of Health had designated LSD as a "narcotic drug" when KRS 217.721 was enacted. Yet the Legislature deemed it proper to define LSD as a "dangerous drug" and fixed a penalty for its illegal possession at confinement in the penitentiary for not less than two nor more than five years or by fine of not less than $1,000 nor more than $5,000, or both. KRS 217.995(2). The prescribed penalties are somewhat less than that imposed by KRS 218.210(2) (a), for possession of "narcotic drugs," in which the range of penalty is imprisonment from two to ten years *and* by fine of not more than twenty thousand dollars.

We do not suggest that this somewhat rapid change in the status of LSD on the records of the State Board of Health is decisive of the issue respecting whether LSD is a narcotic drug vis-a-vis a dangerous drug. It could hardly be questioned that a drug could be both a narcotic drug and quite dangerous. However, by statutory direction, one drug may not be a "narcotic drug" *and* a "dangerous drug"

as those terms are defined in KRS 217.751 and 218.010(14).

With the correct status of LSD in this nebulous area, it was prejudicially erroneous for the trial court to deny appellant an opportunity to challenge the Board's action in designating LSD as a "narcotic drug." This error, however, did not affect the trial itself. We vacate the judgment for further proceedings as hereinafter outlined.

As her second basis for reversal, appellant contends that it was error for the trial court to submit to the jury the issue of whether her consent to the seizure of the LSD by Agent Cook was voluntary. She recognizes that Davis v. Commonwealth, Ky., 398 S.W.2d 701, holds otherwise, but reasons that Davis is no longer authoritative in light of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205. In Bradley v. Commonwealth, Ky., 439 S.W.2d 61, this court considered the question at hand in light of Jackson v. Denno and said:

> "For the future, therefore, we are of the opinion that a motion to suppress, whether it be directed to a confession or to evidence obtained by a search alleged to have been illegal, should be treated in conformity with Jackson v. Denno; that is, the question of voluntariness (in case of a confession) or consent (in case of a search) should be first determined by the trial judge outside the presence of the jury on the basis of an evidentiary hearing of the pertinent evidence on both sides. Only if the trial court finds the evidence to have been validly obtained is it admissible in evidence before the jury, in which event the trial court should admonish the jury not to consider the evidence unless it finds beyond a reasonable doubt that the defendant freely and voluntarily consented to the search (or, in the case of a confession, that he gave it voluntarily and free of coercion)." Id. 439 S.W.2d 64.

■ The trial court conducted a preliminary hearing out of the jury's presence and concluded that a submissible jury issue existed as to whether appellant's consent to the seizure was voluntary. The issue was then properly submitted to the jury. The evidence on the question created an issue—it was not conclusive—the resolution of that issue, following the court's preliminary determination that an issue existed, was properly left to the jury.

■ Appellant's third assignment of error is closely related to the second ground just discussed. In this she urges that the court should have ruled as a matter of law that her consent to the seizure was involuntary in light of the admitted circumstances. Specifically, appellant contends that Agent Cook should have advised her that she had a right to refuse to consent to any search or seizure. It is also contended that coercion for the search and seizure was clearly demonstrated by Agent Cook's reference to the fact that a search warrant could be obtained.

It is true that some courts have deemed it imperative that an officer advise the subject of his right to decline consent for search or seizure as a condition precedent to a determination that any consent for a warrantless search or seizure was voluntary and free from coercion. Other courts have rejected such a rule. Cf. United States v. Moderacki, (D.C.Del., 1968) 280 F.Supp. 633, indicating that prior advice of suspect's right to withhold consent for search is imperative, and Rosenthall v. Henderson, 6 C.C.A., 1968, 389 F.2d 514, in which this question was thus treated:

> "The failure to advise the defendant of his right to withhold consent is *only one factor* to be considered." (Emphasis added.) Id. 389 F.2d, page 516.

■ We regard the quoted statement as a sound statement of the law applicable here. In our view the trial court had adequate basis for ruling that the admitted

failure to advise appellant of her right to refuse consent to a warrantless search was not "decisive" as to whether the consent was coerced.

There was no showing that Agent Cook "threatened" appellant with his right to obtain a search warrant. The trial judge and the jury could and did believe from the total circumstances that the appellant consented voluntarily to the search and seizure, free from coercion.

■ In her fourth assignment of error the appellant maintains that her right to counsel, as guaranteed by the United States Constitution, Sixth Amendment, was violated because Agent Cook did not advise her of her right to counsel until after the damaging seizure of the LSD was made. Most jurisdictions which have considered this problem have concluded that the "Miranda warnings" do not extend to situations such as the present one. Some of the cases so holding are: State v. Forney, 1968, 182 Neb. 802, 157 N.W.2d 403; Lamot v. State, 2 Md.App. 378, 234 A.2d 615; Morgan v. State, 2 Md.App. 440, 234 A.2d 762; State v. McCarty, 199 Kan. 116, 427 P.2d 616; Gorman v. United States (1st Cir.) 380 F.2d 158. It is our view that there is no constitutional guarantee of counsel in the circumstances presented here. Appellant was not in custody. Certainly there was no trial in progress, nor any "critical stage" of trial. We find no merit in this claim of error.

■ Finally, appellant asserts that excessive prejudicial newspaper publicity deprived her of a fair trial. Cited in this connection are some celebrated decisions, including: Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L. Ed.2d 751; Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 13 L.Ed.2d 543. Accompanying her brief is an appendix in which numerous newspaper articles are presented. To discuss these articles in detail would extend this opinion needlessly. Our review of them leaves us unpersuaded that they may be said to have had the impact ascribed to them by appellant. It appears that the trial judge exercised a sound discretion in evaluating the state of public opinion and properly ruled that there was no showing of lack of due process by reason of the assertedly adverse publicity.

The judgment of conviction will be vacated and the proceedings remanded to the trial court with directions to afford appellant a reasonable opportunity to present to the judge evidentiary material directed to the question of whether the action of the Board of Health in designating LSD as a narcotic drug was legal within the purview of KRS 218.010(14). If the court determines that the Board's action was illegal, the prosecution shall be dismissed; if the court determines the Board's action was legal, the judgment of conviction shall be reinstated, subject in either event to the right of the defendant and the Commonwealth to obtain appellate review of an adverse ruling.

The judgment is vacated, and the case is remanded to the trial court for proceedings consistent with the opinion.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, PALMORE and STEINFELD, JJ., concur.

NEIKIRK, OSBORNE and REED, JJ., dissent.

REED, Judge (dissenting).

I dissent from that portion of the majority opinion which holds that the trial judge committed prejudicial error by refusing to afford the appellant the opportunity to make an avowal of evidence concerning whether the action of the State Board of Health in prohibiting the possession, use or distribution of LSD was erroneous. The record does not support the conclusion. I would affirm the judgment.

If KRS 218.010(14) had omitted marijuana (cannabis) and the State Board of

Health under the delegation of power vested by the statute had declared marijuana to be an addictive drug, a more serious question would be presented. There are those who seriously advocate legalizing the use of marijuana and claim that its properties are not addictive, but I am aware of no advocacy of legalizing the drug LSD by any segment of society—expert or lay—users or nonusers. We are not dealing with peanut butter or marshmallow whip. We are confronted with a critically dangerous mind-destroying poison. See 22 A.L.R.3d pp. 1326, 1327.

The State Board of Health is composed in part of members of the medical profession and it is this board that made the judgment to classify LSD as an addictive drug prior to the time of the commission of the offense. The majority opinion recognizes that it would take a strong showing of evidence to induce a court to substitute its judgment concerning the qualities of LSD for that of a board consisting of persons knowledgeable in the field. Indeed the question is not whether Dr. X thinks LSD is addictive and Dr. Y thinks it is not. The question is whether the State Board was without any rational basis to so classify this drug. Only a showing that the State Board was without rational basis would qualify. Therefore, whether the trial judge erred or did not err in not listening to some unspecified evidence by some unspecified persons but instead regarding the finding of the State Board as conclusive could only be prejudicial if the defendant was prepared to show that there was no rational basis for the finding of the State Board of Health.

The majority reads the record as demonstrating that the trial judge refused the defendant an opportunity to place evidence in the record by means of avowal so that this court could determine the question. We do not so read the record. According to the majority opinion, a motion raising the specific question was filed on April 25, 1967. The case was assigned for trial on July 24, 1967. No hearing on

the motion was held in the interim and the appellant does not remotely suggest that this was due to any fault on the part of the trial judge. RCr 8.22 provides that a motion before trial raising the type of defense made here shall be determined before trial. In this instance that rule requires that the issue of fact presented shall be determined by the trial judge with or without a jury on the basis of testimony, or on affidavits, or in such other manner as the court may direct. Therefore, it is clear that the appellant could have accompanied the April 25 motion by affidavits or could have later filed these affidavits up to trial time, incorporating the evidence upon which she relied to establish that the State Board illegally classified this drug. Appellant waited, however, until the trial jury had been partially selected before undertaking to seek an evidentiary hearing on the question. It was then too late.

Nevertheless, even if this procedural noncompliance could be excused, the appellant, in my view, is not supported by the record by reason of the statement quoted in the majority opinion—"and the defendant proffered the evidence by avowal and the evidence was refused by the court." This indicates only that the appellant avowed that if permitted to do so she would introduce evidence before the judge, as she indeed attempted to introduce evidence before the trial jury, that LSD was not an addictive drug. The trial judge's ruling excluding such evidence from the trial jury was clearly correct, even according to the majority opinion.

The avowal that evidence would be offered if the judge would hear it did not relieve appellant of the duty of preserving this evidence in the record by way of avowal for appellate review. RCr 9.52 incorporates the provisions of CR 43.10 concerning the proper manner of making an avowal. There is not one iota of evidence in this record that the appellant attempted to comply with these rules nor is there any evidence whatever that the trial judge

prevented her from doing so. It has long been a rule of criminal appellate procedure that where exclusion of evidence is not followed by avowal as to what the witness would say, and indeed in this instance who the witness was, the defendant cannot complain of the exclusion of the evidence on appeal. See for example Huff v. Commonwealth, 248 Ky. 700, 59 S.W.2d 985; and particularly see an excellent discussion on the point under consideration in Robertson v. Commonwealth, 269 Ky. 317, 107 S.W.2d 292 at page 296.

Therefore, although appellant's noncompliance with the rules of criminal procedure and with established principles of preservation of rejected evidence for appellate review is disregarded, it is still true that in this instance the defect is compounded because we have not been advised even by brief concerning what this proffered evidence was and who proposed to so testify. For all we know from the record, proffered evidence could consist of anything from an opinion by the world's outstanding authority on the addictive properties of drugs to the recommendations and hopes of some street-corner guru. When one reflects about the quantum and character of evidence necessary to demonstrate that a state board of health, composed of members of the medical profession, acted with no rational basis, then one can only marvel at the futility of this whole result to the appellant and to society.

The fact of the subsequent change in classification of LSD by the legislature is of less significance than the circumstances surrounding the defendant and the extent of her contact with this drug. In any event, the penalty inflicted was the minimum so far as confinement is concerned under either the "addictive drug" section or the "dangerous drug" section of the same act. After all, the principal defense of appellant was based upon a plea of temporary insanity induced by her repeated use of this drug. I regard that as not completely insignificant in considering its addictive properties.

In a recent case, the Supreme Court of the United States considered some of the aspects of the problems presented by this appeal. See Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (decided January 20, 1970). Mr. Justice Black dissented from the majority opinion (which had affirmed the conviction of a possessor of heroin) on the ground that a statutory inference in the Federal statute involved impinged upon the constitutional rights of the defendant. In the course of his dissenting opinion, however, the following telling description of the problem is stated in this language:

"Commercial traffic in deadly mind, soul, and body-destroying drugs is beyond doubt one of the greatest evils of our time. It cripples intellects, dwarfs bodies, paralyzes the progress of a substantial segment of our society, and frequently makes hopeless and sometimes violent and murderous criminals of persons of all ages who become its victims. Such consequences call for the most vigorous laws to suppress the traffic as well as the most powerful efforts to put these vigorous laws into effect."

We are not dealing in this case with a youthful, susceptible victim of a seller or distributor of illicit drugs. We are dealing with a woman who had been employed for four years as a research assistant in a medical center and who was found to be in possession at the time of arrest of 80 LSD capsules. As pointed out by Mr. Justice White in the majority opinion in the Turner case, the possession of 275 glassine bags of heroin clearly showed that Turner was more than a mere user of heroin. The evidence demonstrated a high probability that he was engaged in the distribution of the drug. In the instant case, the possession of 80 capsules of LSD suggest more than a mere casual use. It demonstrates a strong probability toward both use and distribution by the appellant.

As to mere users who are the victims of distributors, a reasonable legislative approach may be lighter penalties or maybe

only in certain cases required rehabilitative treatment, but as to probable distributors, the problem is quite different. It may well be that rehabilitative treatment at the time of and after incarceration is the best answer in this type of case. Thereby an attempt is made to save the defendant from further harm to himself and to save society from his influence in probable distribution of the drug. I would rather leave that question to the legislature and to the penal and parole system. To affirm this judgment is really more merciful to all concerned than by multiplying uncertainty and increasing opportunity for further harm which is the result, I fear, of the majority opinion.

I would affirm the judgment.

NEIKIRK and OSBORNE, JJ., join in this dissent.