Donald Barnes **BRADLEY**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 28, 1969.

Rehearing Denied April 25, 1969.

Matthew B. Quinn, Jr., Louisville, for appellant.

John B. Breckinridge, Atty. Gen., Joseph L. Famularo, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Donald Barnes Bradley appeals from a judgment sentencing him to life imprisonment pursuant to a jury verdict finding him guilty of armed robbery. KRS 433.140.

At about 7:00 o'clock one evening a man wearing a light-colored car coat, a dark hat and sunglasses entered a drug store at Bardstown Road and Speed Avenue in Louisville and robbed David Bailen, the proprietor, at gunpoint. He got some $400 in cash and carried it out in a paper sack given him by Bailen at his request. After the thief went out the door Bailen followed in time to see him enter and drive away in a light gray or off-white Ford automobile. Bailen was able to get the license number, which he immediately reported by telephone to the Louisville Police Department. Through a prompt and efficient investigation the police learned within a few minutes that the appellant, Donald Barnes Bradley, owned the automobile and was living at a particular hotel in Louisville. A police cruiser was dispatched at once to the hotel. As the cruiser entered an alley behind the hotel the driver and an accompanying officer saw and recognized the gray Ford in question departing at a high rate of speed. They signalled it to halt, and when it reached the next street intersection it stopped and the driver got out and attempted to run away, but he was brought to bay and arrested at gunpoint by one of the officers. The man arrested was the appellant Bradley. Later in the evening Bailen identified him in a line-up at police headquarters.

The arrest of Bradley was followed by a brief interrogation standing next to the car he had left in the alley. The arresting officer testified that he advised him of his constitutional rights. The officer noticed a shaving kit lying on the floor of the car and asked Bradley what it contained. Bradley disclaimed any knowledge of it (a position to which he remained consistent in his testimony, suggesting that the officer planted it there to incriminate him). The officer then opened the kit and found inside it about $100 in cash. By this time other police officers had arrived, and according to the prosecution testimony Bradley was asked if he would consent to a search of his room and replied that he had nothing to hide and had no objection to a search. According to Bradley, the officers merely asked for his room number and got the key from the hotel manager but did not request

consent to make a search. Anyway, Bradley told the officers he was "staying" in room 146, and they proceeded to search that room, to no avail. It was then discovered from the hotel manager that Bradley's room was not room 146, but room 131, and that he was registered in the name of Philip Randall. (On trial Bradley admitted that room 131 was his room but claimed he usually stayed in room 146 with two other men.) The officers then searched room 131 and discovered the paper bag, a hat, coat and pistol fitting the descriptions given by the victim of the robbery and relayed over the police radio system, and the balance of the money taken from the drug store. They gained entrance to room 131 with a key furnished to them by the hotel manager. Bradley was present during the search of room 131 but did not expressly consent to it.

■ In relation to the chronology of events, Bradley's first contention is that the evidence concerning the shaving kit and its contents was inadmissible because the search of the car was not properly incident to a lawful arrest. His point is that the arrest was made without probable cause, in that the police officers did not have reasonable grounds to believe he had committed a felony. Without reaching the question of whether there was in fact a "search," we are of the opinion that there was a superabundance of probable cause. Cf. Freeman v. Commonwealth, Ky., 425 S.W.2d 575, 579 (1968); Church v. Commonwealth, Ky., 411 S.W.2d 309, 312 (1967). The grounds for believing Bradley had committed a felony were reasonable to the extent of amounting to a virtual certainty.

■ A closer question is presented by the trial court's denial of Bradley's motion to suppress or exclude the evidence gained through the search of room 131. With certain exceptions it is generally held that the right to search incident to an arrest does not extend to the residence or hotel room of a person not arrested on the premises. See discussion in 19 A.L.R.2d 727, 736, 792 et seq. We think in this case,

however, that if Bradley gave the officers permission to search his room, as they said he did, the permission extended to room 131, which was in fact his room even though he sought to deceive the officers by leading them to another room.

■ Ordinarily, when the evidence presents a question as to whether a person has voluntarily consented to a search it should be submitted to the jury by an appropriate instruction. Davis v. Commonwealth, Ky., 398 S.W.2d 701 (1966). However, no such instruction was requested in this case, nor was its omission brought specifically to the attention of the trial court in the motion for new trial. Since the officer who introduced the evidence discovered in Bradley's room testified to facts which in our opinion amounted to a voluntary consent, the trial court did not err in admitting it.

■ It follows, of course, that there was no error in overruling the motion to suppress this evidence. Nevertheless, the procedural aspect of the question provides occasion for comment. In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964), the U. S. Supreme Court held that the Due Process Clause of the 14th Amendment is violated by a procedure under which the trial jury ultimately determines the voluntary character and truthfulness of a pretrial confession. In our later case of Freeman v. Commonwealth, Ky., 425 S.W.2d 575, 578 (1968), it was said that "it seems the sounder practice today would be to leave the question of whether to suppress or not to suppress prior to trial to the discretion of the trial court," etc. Although these opinions were addressed to the admissibility of confessions, the situation with regard to search and seizures is analogous. If the voluntariness of a confession cannot constitutionally be determined solely by the jury which at the same time is determining the defendant's guilt or innocence, neither should the voluntariness of a consent to search.

For the future, therefore, we are of the opinion that a motion to suppress, whether it be directed to a confession or to evidence obtained by a search alleged to have been illegal, should be treated in conformity with Jackson v. Denno; that is, the question of voluntariness( in case of a confession) or consent (in case of a search) should be first determined by the trial judge outside the presence of the jury on the basis of an evidentiary hearing of the pertinent evidence on both sides. Only if the trial court finds the evidence to have been validly obtained is it admissible in evidence before the jury, in which event the trial court should admonish [1] the jury not to consider the evidence unless it finds beyond a reasonable doubt [2] that the defendant freely and voluntarily consented to the search (or, in the case of a confession, that he gave it voluntarily and free of coercion).

Bradley testified that he asked permission to telephone an attorney before he was put in the police station line-up, but was not given the opportunity of doing so until afterward. He said also that immediately before appearing in the line-up he overheard someone say to Bailen, "All you have to do is point him out. We know we got him." He was required to wear the hat and coat found in his hotel room and happened to be the only one of the five persons in the lineup who was wearing a white shirt. All of these circumstances, and especially the fact that he was unable to gain access to counsel before appearing in the line-up, form the basis of a contention that his constitutional rights were violated and that the trial court erred in overruling his motion to suppress Bailen's identification.

■ The constitutional right to counsel at a post-indictment line-up conducted for identification purposes has been established by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Presumably the same principle applies to any such procedure while the defendant is in custody pursuant to an arrest. Recognizing, however, "that retroactive application of *Wade* and *Gilbert* 'would seriously disrupt the administration of our criminal laws,'" the Supreme Court in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), applied the Sunburst principle of prospective effect only. [3] In so doing, the court pointed out that regardless of the right to counsel, if the confrontation was conducted in such manner as to violate the defendant's right to due process of law he is entitled to relief. The line-up in which Bradley appeared was conducted on December 2, 1966. The *Wade* and *Gilbert* cases were decided on June 12, 1967. Hence they do not apply. The totality of circumstances attending the line-up do not suggest any substantial possibility of a mistaken identification, and we are of the opinion that there was no violation of due process.

■ The last contention is that the court failed to instruct the jury in writing that its verdict must be unanimous. Cf. RCr 9.54, 9.82. Under precisely the same circumstances it was held in Freeman v. Commonwealth, Ky., 425 S.W.2d 575, 579 (1968), that the question came too late. For the benefit of the trial bench, however, we suggest that the requirement of a unanimous verdict be included in the written instructions.

The judgment is affirmed.

All concur.

---

1. We think a timely admonition would be more effective than an instruction given at the end of the trial.

2. If the evidence is vital, as in the usual case it surely will be, the defendant is entitled to the reasonable doubt protection. See Smith v. Commonwealth, 197 Ky. 192, 246 S.W. 449, 450–451 (1923).

Cf. Cline v. Commonwealth, 312 Ky. 645, 229 S.W.2d 435, 437–438 (1950).

3. "We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date." 388 U.S. at p. 296, 87 S.Ct. 1967, at p. 1969.