**Thomas O. HAYES, Petitioner-Appellant,**

v.

**Elmer O. CADY, Respondent-Appellee.**

**No. 73–1884.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1974.

Decided July 22, 1974.

Rehearing and Rehearing En Banc
Denied Aug. 28, 1974.

---

Francis X. Beytagh, Jr. and Patrick Perry, Law Student, Notre Dame, Ind., for petitioner-appellant.

Robert W. Warren, Atty. Gen., William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

PER CURIAM.

Petitioner was convicted of burglary and first degree murder in the County Court of Racine County, Wisconsin. The Supreme Court of that state affirmed the murder conviction. Hayes v. State, 39 Wis.2d 125, 158 N.W.2d 545 (1968). This appeal is from a subsequent denial of a writ of habeas corpus. The question before us is whether evidence seized during a warrantless search of petitioner's room was improperly received in evidence at his murder trial.

On June 22, 1965, Felix Baker was arrested when he attempted to cash a check from the burglarized Perma Cast Company of Racine, Wisconsin. Police searched Baker's person upon his arrest and found a social security card and membership card bearing the name of Henry Winkel. Winkel had been discovered lying unconscious on the floor of his Racine radio and television shop on June 3, 1965, and died on June 16 as a result of multiple skull fractures and other injuries.

Baker implicated petitioner in the Perma Cast burglary. He told police that he and petitioner shared a room in Waukegan, Illinois, and consented to its search. Upon his June 22 arrest, petitioner was asked for his consent to search that room but replied that he did not own a room there and that the Waukegan room was Baker's. Racine police officers traveled to Waukegan and searched the room without a warrant and seized a wallet and several pieces of

identification belonging to Winkel, as well as a pair of blood-spattered pants and other articles admitted into evidence against petitioner. At the time of the search, Baker told the police that he was a tenant of the room and gave them his oral and written permission to conduct the search. In fact, he was present at the time of the search. The landlady did not inform the police that Baker was no longer a tenant, but she ordered him to get "all the stuff" out of the room.

As the Wisconsin Supreme Court pointed out, subsequent investigation revealed that the room was rented to Baker and petitioner on June 7, 1965, for $15 per week. On June 13, Baker checked out and the landlady reduced petitioner's weekly rent to $12. He paid $12 rental on June 13 but did not make any payment for the week commencing June 20. On the morning of June 22, the day of the search, the landlady saw Baker and petitioner leave the room. Of the two keys thereto, she kept one and gave one to petitioner. 39 Wis.2d at 131, 158 N.W.2d 545.

In its opinion denying habeas corpus relief, the district court concurred in the following reasoning in the Wisconsin Supreme Court's opinion:

> "[T]he defendant's denial of a possessory interest in the Waukegan room lies at the heart of the validity of the search thereof. * * * The trial court correctly determined that there could be no unlawful search of premises in which the defendant disclaims any interest." 39 Wis.2d at 131, 132, 158 N.W.2d at 547.

In urging affirmance, the State relies on petitioner's waiver of his Fourth Amendment rights by disclaiming ownership of the room. The State also relies on Baker's consent to the search.

■■ The search was not invalid under the Fourth Amendment. Petitioner's disclaimer of any interest in the Waukegan room made it reasonable for the police to rely on the consents of Baker and the landlady. We need not decide whether petitioner's disclaimer would have been a sufficient consent in the absence of any other justification for search, or a permanent waiver of his Fourth Amendment rights. We hold only that the police were entitled to take petitioner at his word and proceed to seek consents from persons who would have rights to the room if petitioner did not. Petitioner suggests that Baker's consent was not proven to have been voluntary; we need not decide that issue, for the landlady's consent was sufficient. Since Baker had checked out of the room nine days earlier, and petitioner disclaimed any interest in the room, it was as if there were no tenants, and the right to consent reverted to the landlady. Cf. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828.

■■ It is not clear whether petitioner's disclaimer of interest in the Waukegan room should be considered as a consent or a statement in response to interrogation, but neither characterization renders the evidence found in the room inadmissible. It was unnecessary to advise petitioner that he could refuse consent to search before asking for his consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. We agree with the Ninth Circuit that Schneckloth controls even when, as here, the suspect was in custody when consent was sought. United States v. Heimforth, 493 F.2d 970 (1974).

■ Before denying his right to possession of the room, petitioner had been given the usual warnings later required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, except that he was not told of his right to appointed counsel if indigent.* This case is therefore quite like Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182. We think that Mr. Justice Rehnquist's

---

* The State advises us that Wisconsin police could not have offered him free counsel at that time because there was then "no law that said they could."

reasoning in *Tucker* is applicable here, and that it was not necessary to exclude the objects taken from the apartment as fruit of an unlawful interrogation. See also United States v. Sicilia, 475 F.2d 308, 311 (7th Cir. 1973).

Affirmed.