Donald Barnes BRADLEY, Petitioner-Appellant,

v.

Henry E. COWAN, Warden, Respondent-Appellee.

No. 76–2141.

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1977.

Decided Aug. 24, 1977.

at this citation (561 F.2d 1213), was withdrawn from the bound volume at request of the court.

Donald Barnes Bradley, pro se.

Katherine A. Keller, Cincinnati, Ohio (Court-appointed), for petitioner-appellant.

Robert F. Stephens, Atty. Gen. of Kentucky, Deedra Benthall, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before PHILLIPS, Chief Judge, WEICK and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from denial of a petition for writ of habeas corpus which had been remanded to the District Judge for hearing when it was first presented to this court. See *Bradley v. Cowan,* 500 F.2d 380 (6th Cir. 1974). After full hearing the District Judge has again denied the writ, this time holding as to appellant's principal issue claiming violation of the Fourth Amendment by a warrantless search of his hotel room that his denial that the room in question was his warranted the police in relying upon the hotel manager's consent to search that room. *Hayes v. Cady,* 500 F.2d 1212 (7th Cir.), *cert. denied,* 419 U.S. 1058, 95 S.Ct. 642, 42 L.Ed.2d 655 (1974).

Appellant claims that the warrantless search of a room which the police had probable cause to know he occupied was in violation of the Fourth Amendment. He claims that the admission, over objection, of objects found in that search requires issuance of the writ.

The state relies upon the District Judge's opinion. It also argues that since Judge Gordon's hearing and order denying relief, the Supreme Court's opinion in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1046 (1976), now precludes relief to appellant, since the state asserts that appellant had a fair and full opportunity to litigate his Fourth Amendment claims before the state court.

Additionally, the state asserts that in the event we found a Fourth Amendment violation in the search of appellant's room, the admission of evidence from that room was harmless error beyond reasonable doubt.

Appellant was convicted in the Jefferson County Circuit Court of armed robbery and sentenced to life imprisonment on November 1, 1967. The charge against him concerned the holdup of a drug store and the evidence disclosed that the drug store proprietor managed to get a description of the get-away car and its license plate so as to occasion police identification of the vehicle as belonging to appellant and arrest of the defendant in the car outside the hotel in question. Part of the loot from the robbery was seized from the floor of the car's front seat at the time of appellant's arrest. Testimony concerning this was not and is not the subject of any complaint.

After appellant's arrest, he was taken by the police back to the hotel and with his consent a room (146) which he identified as where he had been staying was searched, with no results pertaining to the robbery. The hotel management then told one of the officers that appellant had been staying in another room (131) under an assumed name. The police asked appellant whether that was his room and he repeatedly replied that it was not. Thereupon the hotel manager opened the room, resulting in the seizure of a hat and coat, a paper bag, and a loaded

pistol. All of these items were introduced at appellant's trial after being identified by the drug store owner as having been used in the robbery.

At appellant's state court trial when these items were offered in evidence, there was an objection based upon the Fourth Amendment which was abruptly denied without hearing. There had also been a preceding written motion to suppress this evidence filed in advance of trial which had been denied without hearing. I do not believe that *Stone v. Powell, supra,* eliminates the need for federal habeas scrutiny of this record. *See Bradley v. Cowan, supra* at 381.

The government in this appeal specifically disavows reliance upon any exigent circumstances as justifying this warrantless search.

In addition, there are factual distinctions between this case and *Hayes v. Cady, supra.* Appellant in this case had checked into this room, albeit under an assumed name, and had not checked out. No other occupant gave consent to the search in our instant case. *Cf. Hayes v. Cady, supra,* at 1214; *Hayes v. State,* 39 Wis.2d 125, 158 N.W.2d 545, 547–48 (1968), *cert. denied,* 394 U.S. 988, 89 S.Ct. 1474, 22 L.Ed.2d 763 (1970). Nor does appellant's denial of possession of this room fit the consent search exception of *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ The officers who searched Room 131 clearly had probable cause to believe that it was a room which had been rented by appellant under an assumed name. In order to search it for evidence of the crime for which they had already arrested appellant, they needed either a search warrant, exigent circumstances which excused absence of the search warrant, or appellant's voluntary and specific consent. *See Bradley v. Cowan, supra* at 381. *Cf. United States v. Chadwick,* —— U.S. ——, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Since none of these prerequisites is present in this case, I must conclude that the search was in violation of the Fourth Amendment.

■ The last issue in this case, however, concerns the government's contention that even if the search was unconstitutional and the introduction of the evidence seized there was allowed in error, that the error was harmless beyond reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To determine this issue we examine the evidence of appellant's guilt, other than that seized in the motel room, with a full awareness that that evidence was directly probative of the crime alleged.

The evidence properly and legally admitted at the state court trial included the following evidence pertaining to the store owner's testimony:

Q. Will you tell the Court and the jury what, if anything, of an unusual nature occurred and happened to you on December 2nd, 1966 in the evening?

A. A little before 7:00 I had gone to the back of the store and I have a buzzer on the door that rings in the back of the store and when I heard this I walked up assuming I had a customer and this man was standing by my register. I said, "May I help you?" and there was a little space between the counter and the register and he walked up close and he had an automatic and just how he said it I don't know but he told me to open the drawer and take the money out of the drawer. After I gave him the money he said, "Where's the safe?" Well, I assumed he knew where the safe was because the safe was up in the front of my store there. He said, "Is there any money?" and I said "No" and he said, "Well, let's go up and look at it." And he came with me and I opened the safe and I have a cash box in the safe and it was open and he saw that there was money in it and he says, "Give me the whole thing. Don't give me the box, just give me the money" and so I put it down on the case there and during that time several customers came in and I told them I'd be with them in a minute because I didn't want them to realize what was going on and then they walked on around in the store. He had

this gun inside his coat during this time. He took the money and he said, "Give me something to put it in" and I said, "Put it in a bag there, pick up a bag there if you want it." He wouldn't do it. He picked the money up and backed away behind the counter. By then I had taken a bag out and he put the money in the bag and left.

Q. And what did you then do, Mr. Bailen?

A. I followed him out, saw which way he had gone, saw him get in the car, got the license number and as much of a description of the car as I could and went back in and called the police.

Q. What kind of car was this, to the best of your recollection?

A. Gray Ford, the model I don't know.

Q. A gray Ford and you did get the license number?

A. That's right.

Q. And reported it to the police?

A. That's right.

Q. Now, you say this happened shortly before 7:00 o'clock and this is 7:00 P.M.?

A. That's right.

Q. And did you get a good look at this gun?

A. Yes.

Q. Do you know whether it was a revolver or an automatic?

A. Automatic.

Q. Did you have any idea at that time of the calibre of this automatic?

A. I knew it was either a 32 calibre or a 38 calibre. I didn't wait to find out.

Q. Well, sir, at the time this man came into your store and pointed this gun, were you in fear of your life?

A. I would say yes. Any time anyone points a gun at me, a stranger points a gun at me, I'm going to be listening to what he says.

Q. Now, the money that was taken in this holdup, was it possible for any of it to be identified?

A. Yes, as I told the police later, a few of the coin wrappers had my own stamp upon them and I told them what bank stamp would be on them and what possible tellers would be on them before they even found it.

Q. And did you see these same coin wrappers and money later on?

A. Yes.

Q. When was that?

A. Later that evening when it was recovered.

Q. And you identified the coin wrapper that the police showed you as the coin wrappers that contained the money which was taken from your store?

A. Right.

Q. Approximately how long a time was the defendant in your store?

A. Possibly 5 minutes.

Q. Is your store well lighted?

A. Very well lighted.

Q. Is the man who robbed you at gun point on December 2nd, 1966, in the courtroom today?

A. Yes.

Q. Will you point to the man whom you say robbed you at gunpoint that day?

A. The man in the sweat shirt (indicating).

MR. FISHER: Let the record reflect that the witness is pointing to the defendant on trial, Donald Barnes Bradley.

*       *       *       *       *       *

Q. by Mr. Fisher: I hand you a photograph of the alleged lineup that evening and ask you to examine that photograph and tell the jury and Court whether this photograph fairly and accurately represents the lineup which was held on December 2nd, 1966.

A. Yes, it does.

Q. And was this the lineup in which you picked out the defendant Donald Barnes Bradley as the man who held you up at gunpoint several hours earlier?

A. That's right.

Q. And which man is that on this photograph?

A. The middle man.

Q. The middle man?

A. The middle man, that's right.

MR. FISHER: I will introduce this in evidence as Commonwealth's Exhibit No. 5.

Q. by Mr. Fisher: I hand you another photograph of this lineup, Mr. Bailen, and ask you if this picture fairly and accurately represents the lineup which was held on the evening of December 2nd, 1966?

A. That was the same man.

Q. And which man is the defendant in this case?

A. Center man.

MR. FISHER: Let this be Commonwealth's Exhibit 6.

STENOGRAPHER'S NOTE: At this time Commonwealth's Exhibits No. 5 and No. 6, being photographs, were identified and admitted with objection to become a part of this record.

Q. by Mr. Fisher: And you identified him positively on this occasion as the man who held you up at gunpoint?

A. That's right.

Q. And there is no question in your mind? It was a positive identification?

A. No question at all, no.

The evidence also included the following testimony of the arresting officer:

Q. Will you tell us what, if anything, you did as a result of receiving a call on the radio as to the Armed Robbery of Bailen's Dispensary on Bardstown Road?

A. Yes, sir. At approximately 7:40 P.M. we received over the police radio a report that the man who bought the car, Donald Barnes Bradley, was living at the Marquette Hotel at 1249 South 3rd Street. My partner and I immediately started toward this location. We went north on 2nd Street to Ormsby, west on Ormsby to the alley and started north in the alley. Approximately a quarter of the way through this alley we spotted a car, an off-colored white Ford, leaving the rear of the Marquette apartments at a high rate of speed. We immediately gave chase noted the license number K3868 as the one wanted for the holdup. We put on our red light and siren and the operator of the car stopped right about at the alley there and he jumped out and proceeded to run west on Oak and I jumped out behind him and pulled my pistol and told him to halt or I would shoot and he stopped immediately. I went over and shook him down and brought him back to the car. Coming back to the automobile I noticed laying on the floorboards at the driver's feet, where the driver's feet would be, was a black shaving bag. I placed the man under arrest and advised him of his constitutional rights and I asked him, I said, "What's in the bag?" and he said he didn't know the bag was there. We opened the bag and there was about a hundred or so dollars in money in the bag. We said, "How did this get here?" and he said he didn't know.

The positive identification of appellant by the drug store owner, the positive and confirmed identification of the getaway car, the circumstances of the arrest, and the fact that appellant obviously lied about which room he lived in at the hotel all supplied strong evidence of guilt. In addition, the bank wrappers ("rolls of coin") found in the car at the time of appellant's arrest were positively identified by the store owner as part of the loot from the robbery. Under these circumstances, we deem the admission of the evidence seized in the hotel room to be purely cumulative and harmless beyond reasonable doubt within the intendment of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment of conviction is affirmed.

PHILLIPS, Chief Judge, concurring in the result.

I concur in the result on the ground that petitioner is precluded from resorting to federal habeas corpus relief by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1046 (1976). In that case the Supreme Court said:

We hold, therefore, that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. 428 U.S. at 481–82, 96 S.Ct. at 3045–3046.

As I read the record in the present case, petitioner was provided "an opportunity for full and fair litigation" of his fourth amendment claim in the State courts of Kentucky. He raised this issue before trial by motion to suppress, at trial by objection, on direct appeal after trial (see *Bradley v. Commonwealth,* 439 S.W.2d 61, 63 (Ky. 1969)), and by motion to vacate sentence pursuant to Kentucky R.Cr. 11.42.

WEICK, Circuit Judge, concurring.

■ This is a strong case for the application of the harmless error rule enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The robber here was positively identified by the victim, who had full opportunity to observe him during the commission of the robbery of the drugstore. The victim was able also to observe and identify the robber's automobile and its license number as the robber was driving away from the store. The victim immediately called the police, who drove to the hotel where the robber had been living. As the officers approached the hotel the robber, who had observed their approach, drove away at high speed, but the police were able to apprehend him. A search of the robber's car incident to the arrest revealed a part of the money and other items which were stolen from the store. No question has been raised as to the validity of this search of the car. Appellant is questioning the validity of the search of room 131 in the hotel.

The robber's conviction was affirmed by the Court of Appeals of Kentucky in an appeal from the denial of a motion to vacate. *Bradley v. Commonwealth,* 439 S.W.2d 61 (Ky.1969), *cert. denied,* 397 U.S. 974, 90 S.Ct. 1091, 25 L.Ed.2d 268 (1970). The facts are set forth in the opinion of the court, which concluded, in part:

We think in this case, however, that if Bradley gave the officers permission to search his room, as they said he did, the permission extended to room 131, which was in fact his room even though he sought to deceive the officers by leading them to another room.

■ It would appear, therefore, that not only was Bradley "afforded an opportunity for full and fair litigation of his claim in the state courts," but also he exercised that opportunity. He is therefore precluded from resorting to habeas relief in the federal courts under the recent decision of the Supreme Court in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1046 (1976).

Prior to the decision in *Stone v. Powell, supra,* however, we had remanded Bradley's habeas case to the District Court for an evidentiary hearing. *Bradley v. Cowan,* 500 F.2d 380 (6th Cir. 1974). It was Bradley's contention that he had consented only to the search of room 146 in the hotel and not to room 131, where the gun and additional items involved in the robbery were found. As to this search District Judge Gordon made the following findings and conclusions:

The search which resulted in finding the gun and some of the money from the robbery involves two rooms in the Marquette Hotel—room 146 and room 131. Petitioner, shortly after the arrest, and after advice as to his rights (T.P. 86), told the officers that he stayed in room 146 with another person. (T.P. 22–23). (T.E. 88). He was actually registered in room 131 under an alias. (T.E. 99). He did not tell this to the officers. (T.E. 89). (T.E. 22–24). He said he could not give consent to search room 146, although the police officers testified he gave consent. This conflict is not important. The officers and petitioner entered the room, and nothing had been found when another officer entered the room with the information that room 131 was the one registered to petitioner, and the one in which he was staying. They all proceeded to room 131. A police officer testified that he asked petitioner four times if room 131

was his, and received a denial as to that or any room other than 146 each time, before the manager unlocked the door and they entered and searched the room. (T.P. 89). Petitioner denies that he was so asked and, of course, no one testified that he consented to a search of room 131. (T.P. 24). It is significant to note while resolving this conflict that petitioner never testified at trial, or here, that he at any time corrected his earlier statement that he resided in that hotel in room 146, impliedly to the exclusion of any other room, and never once has he testified that he made known to the officers that he resided, either instead or also, in room 131; a *fortiori,* he does not claim that the room was searched in the face of his refusal to consent. This misinformation as to where he resided, coupled with his silence when he had the opportunity to correct the false impression earlier conveyed, constituted a waiver of any claim of a possessory interest in room 131. We hold this even if we accept as true the petitioner's version that he was not specifically asked by an officer if he resided in room 131. On the contrary, however, petitioner's failure in either proceedings to testify that he acknowledged occupancy of 131 lends credence to the officer's testimony that the former affirmatively denied such occupancy. In either event, however, petitioner's actions amounted to a disclaimer, and the intrusion into the room, consented to by the manager, did not violate petitioner's Fourth Amendment rights. *Hayes v. Cady,* 500 F.2d 1212 (7th Cir. 1974).

In my opinion these factual findings are supported by substantial evidence and are not clearly erroneous. The conclusion of law is also correct.

I agree that the police had probable cause to obtain a search warrant to search room 131, but in my opinion it was not necessary for them to obtain such warrant because Bradley had advised the police four times that room 131 was not his room. This amounted to a disclaimer, and the police "were entitled to take petitioner at his word . . .." *Hayes v. Cady,* 500 F.2d 1212, 1214 (7th Cir. *en banc* 1974).