James Ivey DUNN, Petitioner,

v.

Jim ROSE, Warden, Tennessee State Penitentiary, Respondent.

No. 80–3337.

United States District Court, M. D. Tennessee, Nashville Division.

Jan. 16, 1981.

James Ivey Dunn, pro se.

John C. Zimmermann, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM

WISEMAN, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 on the grounds that: (1) his fourth amendment rights were violated by the seizure of evidence used against him at trial under a warrant that was issued pursuant to an untruthful affidavit; (2) his double jeopardy rights were violated by his retrial, granted upon his own motion, after which he obtained a harsher sentence; and (3) he was not afforded effective assistance of counsel at trial. The petition shall be denied.

### Facts

On August 24, 1977, a jury of the Robertson County Criminal Court found petitioner guilty of possession of heroin with intent to sell and sentenced him to a term of imprisonment of not less than ten years nor more than fifteen years, plus a fine of $10,000.[1]

---

1. Prior to this trial petitioner had been found guilty by another Robertson County jury and sentenced to not less than seven years nor more than fifteen years and an $18,000 fine. Petitioner asked for the second trial because a malfunction of the stenographer's equipment prevented the preservation of a record for appeal.

Petitioner's conviction was affirmed by the Tennessee Court of Criminal Appeals. Two questions were addressed by the court. Petitioner's claim that the search warrant was invalidly issued was not substantively resolved by the court because the warrant itself was never introduced into evidence.[2] The court affirmed the second conviction because petitioner himself asked for a new trial and vindictiveness was not the alleged motivation for the second and harsher sentence. The Tennessee Supreme Court denied certiorari on March 19, 1979. On May 30, 1979, petitioner's postconviction relief petition was dismissed after an evidentiary hearing. On March 20, 1980, the court of criminal appeals affirmed the dismissal of the petition for postconviction relief, and petitioner's application for permission to appeal was denied by the Tennessee Supreme Court on May 19, 1980. Contrary to respondent's position, petitioner has exhausted his state remedies.[3]

### The Fourth Amendment Claim

Petitioner claims that his fourth amendment rights were violated by the seizure of evidence pursuant to a search warrant that was issued on the basis of information supplied by a named informant. More specifically, he alleges that a Tennessee Bureau of Identification [TBI] agent, William Holt, made false statements in the supporting affidavit when he swore that the informant, Larry Weatherford, "had furnished reliable information as to law violations all of which have been verified by fellow officers." According to petitioner, this statement was false, thereby voiding the warrant, and thus the evidence seized pursuant to it should have been suppressed.[4]

**2.** The court said, "The search warrant was never introduced into evidence, it is not a part of the bill of exceptions, and, therefore, it cannot be reviewed by this Court," citing *Fine v. State*, 183 Tenn. 117, 191 S.W.2d 173 (1945). *Dunn v. State*, 569 S.W.2d 799 (Tenn.Crim.App.1978).

**3.** *See* pages 1341, 1342 *infra*.

**4.** Not until *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, decided in 1978, did the Supreme Court hold that there is a limited constitutional right to attack the truthfulness of allegations made in an affidavit supporting a search warrant. Because petitioner's

Respondent maintains that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars the Court from considering petitioner's fourth amendment claim. *Stone* held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." 428 U.S. at 494, 96 S.Ct. at 3052. Having reviewed the record of petitioner's state court challenges based on the indentical claim now raised here, the Court concludes that respondent's position is correct.

The Court begins its analysis by noting agreement with a student commentator who wrote that the *Stone* standard is "hopelessly ambiguous." Note, *Habeas Corpus after* Stone v. Powell: *The "Opportunity for Full and Fair Litigation" Standard*, 13 Harv.Civ.Rts.—Civ.Lib.L.Rev. 521, 529 (1978). *See also* Comment, 30 Vand.L. Rev. 881 (1977). Respondent's position is that *Stone* is satisfied if a state simply provides the naked procedural mechanism for raising fourth amendment claims, regardless of whether they are in fact litigated at any level in the state system. This "hard-line" view apparently enjoys some currency in the Fifth and Seven Circuits. *See Williams v. Brown*, 609 F.2d 216 (5th Cir. 1980); *Swicegood v. Alabama*, 577 F.2d 1322, 1324–25 (5th Cir. 1978); *Maxey v. Morris*, 591 F.2d 386 (7th Cir. 1979). This Court rejects that position for two general reasons.

First, if the Supreme Court had meant to bar fourth amendment claims on habeas trial was in 1977, there is a threshold question of whether his petition even states a cognizable fourth amendment claim, given the general nonretroactivity of fourth amendment cases. The Court concludes, however, that the issue was sufficiently ambiguous in 1977 that petitioner's fourth amendment argument should not be summarily dismissed for failure to state a constitutionally cognizable claim. *See Franks v. Delaware, supra*, 438 U.S. at 159 n.4, 98 S.Ct. 2678 (citing earlier circuit court cases recognizing a constitutional right to challenge the veracity of a warrant affidavit).

corpus so long as a state supplies a procedure for raising such claims, there would have been no need for using the language of "opportunity" at all; the Court would have simply held that there shall be no habeas corpus for fourth amendment claims. Although this Court has not researched the criminal procedure of every state, it seems a safe assumption that all states provide procedural mechanisms for raising fourth amendment issues. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), implicitly mandates such procedures, or else there would be no way for the states to apply the exclusionary rule, as required by *Mapp*. The Supreme Court must have contemplated that the concept of "opportunity for full and fair litigation" would carry some content, but the interpretation urged by respondent and apparently accepted by the two circuits noted above strips these words of any genuine meaning. Consequently, this Court will not accept that interpretation until the Supreme Court or the Sixth Circuit otherwise decrees.

The second and perhaps more substantial reason for rejecting respondent's interpretation lies in the rationale and language employed by the *Stone* Court. The Court began with the premise that the exclusionary rule is a "judicially created means of effectuating" fourth amendment rights, and not a "personal constitutional right." 428 U.S. at 482, 486, 96 S.Ct. at 3048. Justice Powell then weighed "the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims," 428 U.S. at 489, 96 S.Ct. at 3050, and concluded that the societal costs of applying the exclusionary rule on collateral review outweigh the minimal benefits. 428 U.S. at 494–95, 96 S.Ct. at 3052–53. It is important to emphasize, however, that the Court's "weighing" of the exclusionary rule's benefits against the

costs of applying it on collateral review contemplated a situation in which the fourth amendment claim at issue had been "rejected by two or more tiers of state courts." 428 U.S. at 491, 96 S.Ct. at 3051. Indeed, Justice Powell wrote that the question presented by *Stone* was whether state prisoners who have been afforded the opportunity for full and fair consideration of their fourth amendment claims in state court "may invoke their claim *again* on federal habeas corpus review." 428 U.S. at 489, 96 S.Ct. at 3050. (emphasis added). This language strongly suggests that a basic premise of *Stone's* analysis is that a prisoner has in fact presented his fourth amendment claims to the appropriate state trial and appellate courts before raising them again in a habeas corpus proceeding.[5] Indeed, both petitioners in *Stone* had raised their search and seizure claims at trial and on appeal in state court.

■ In light of *Stone's* rationale and the procedural postures of the two cases before the Court in *Stone*, this Court concludes that *Stone* bars federal habeas corpus relief on a fourth amendment claim only if the prisoner has in fact presented his claim to the state courts at trial and on direct appeal. *Stone* does not require the state courts to "fully expound upon such alleged error," but the state courts "must take cognizance of the constitutional claim and render a decision in light thereof." *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977). Stated another way, this Court concludes that *Stone* bars the *relitigation* in federal court of claims raised in state courts; if the state trial and appellate courts declined to take cognizance of a search-and-seizure claim, *Stone* does not prohibit relief in federal court, although other principles of habeas corpus law probably will. E. g., *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

5. In *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the Supreme Court held that a previously litigated challenge to the composition of a state grand jury is not barred from federal habeas review by *Stone*. Justice Powell, in his concurring opinion, disagreed with that holding, and wrote that "[t]he review by a single federal district court judge of the considered judgment of a state trial court, an intermediate appellate court, and the highest court of the State, necessarily denigrates those institutions." 443 U.S. at 585, 99 S.Ct. at 3015. Because Justice Powell's concurrence was essentially a restatement of his analysis in *Stone*, the Court thinks it reasonable to assume that this statement accurately reflects Justice Powell's position in the earlier case.

This conclusion is consistent with a 1963 Harvard Law Review article that obviously made a strong impression on Justice Powell, the author of *Stone*. *See* Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963). The impact of this article on Justice Powell's reasoning is manifested by its three citations in the Court's opinion. *Stone v. Powell*, 428 U.S. at 475 n.7, 476 n.9, 493 n.35, 96 S.Ct. at 3043 n.7, 3043 n.9, 3052 n.35. Professor Bator's article expresses serious discontent with the notion of federal courts readjudicating constitutional claims that have been fully litigated in the state system. *See, e. g.*, Bator, *supra*, at 444, 487, 527–28. In fact, he expressly disavows any intention of dealing with the problem of a state prisoner who has not raised his "federal contentions." *Id.* at 444. Given the substantial influence of this article on the *Stone* decision that a comparative reading reveals, this Court believes that *Stone*'s reliance on Bator's article provides significant support for the conclusion that Justice Powell's opinion contemplated a petitioner who has confronted the particular state system with his fourth amendment contentions.

█ In the words of two recent commentators, "*Stone v. Powell* decided the preclusive consequences of *raising* claims in the state court." R. Cover & T. Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L.J. 1035, 1076 (1977) (emphasis in original). These authors conclude that "in Stone the Court held that actual litigation and denial of the Fourth Amendment exclusionary claim before the state court would have a res judicata effect in federal habeas corpus provided that the state had afforded the petitioner an opportunity for full and fair litigation of the claim." *Id.* Thus interpreted, *Stone*'s primary effect is to establish a res judicata bar to claims that have been raised and denied in the state system. A petitioner who has raised his claims in state court is allowed to relitigate their merits on habeas only if he can show denial of an opportunity for full and fair litigation. Under this view, the "opportunity" standard supplies the only exception to the res judicata rule. The rule is completely inapplicable, however, if the particular claim was not raised in and denied by the state courts.

█ As Cover and Aleinikoff recognize, *Stone* might not bar relief even when a claim has been addressed in the state system, if the petitioner can meet the heavy burden of showing that he was denied a meaningful opportunity for full and fair litigation by the state courts. For example, a petitioner should have access to the federal courts if the state courts are simply ignoring federal fourth amendment law. *See Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978). There is, however, no general requirement that the state courts reach correct results in regard to fourth amendment claims, nor is this a proper focus of inquiry for a federal court presented with such a claim. This conclusion is amply demonstrated by the *Stone* Court's refusal to consider the merits of the decisions reached by the state courts that sustained the convictions of the two petitioners in *Stone*. *Cf. Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977) (state appellate court's mistake in considering facts outside the record does not bar application of *Stone*). The rationale for this apparent indifference to the correctness of state court adjudications lies in the *Stone* Court's belief that federal judges are no more competent in dealing with fourth amendment claims than state judges. *See* 428 U.S. at 493 n.35, 96 S.Ct. at 3052. Given this equality of competence, there would be only an incremental benefit if federal judges were allowed to apply the exclusionary rule on habeas corpus after their equally competent state brethren have already ruled against the petitioner. The Supreme Court concluded that this "additional contribution" of the federal system towards upholding fourth amendment values is greatly outweighed by the societal costs of applying the exclusionary rule on habeas corpus. *See* 428 U.S. at 489–96, 96 S.Ct. at 3050–53.

█ Another exception to *Stone*'s res judicata doctrine comes into play if the state court's procedures for adjudicating a factual dispute were inadequate. *Stone* seems to contemplate that, when the facts of a

search-and-seizure claim are in dispute, "fullness and fairness" require a state court hearing that satisfies the criteria of *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *See* Comment, 30 Vand.L.Rev. 881 (1977). *Townsend* sets forth the standards for district courts to follow in determining whether the condition of a state record requires a new evidentiary hearing on a constitutional claim in a federal habeas action.[6] The "hint" that *Stone* requires at least this much is found at footnote 36 of the opinion, which follows a reference to "full and fair litigation" in text. 428 U.S. at 494 n.36, 96 S.Ct. at 3052. The footnote itself merely contains the citation "*Cf. Townsend v. Sain*" without further comment (citation omitted). This reference to *Townsend* has been commented on extensively, since it is the only substantive indication of what the Supreme Court meant by an opportunity for full and fair litigation. *See e. g., Mack v. Cupp*, 564 F.2d 898 (9th Cir. 1977); *O'Berry v. Wainwright*, 546 F.2d 1204 (5th Cir. 1977); Note, *Habeas Corpus after* Stone v. Powell: *The "Opportunity for Full and Fair Litigation" Standard*, 13 Harv.Civ.Rts.–Civ.Lib.L.Rev. 521 (1978); Comment, 30 Vand.L.Rev. 881 (1977). The Court concludes that the *Townsend* citation means that a petitioner who raised a search-and-seizure claim at trial is entitled to a federal evidentiary hearing if the state court proceedings failed to pass muster under the *Townsend* criteria. *See Gates v. Henderson*, 568 F.2d 830, 837 (2d Cir. 1977) (en banc). The Court observes, however, that the signal "*cf.*" suggests that the *Townsend* criteria are not necessarily to be applied literally. *See id.* at 837–38. To the extent that *Townsend* requires a reweighing of the merits (e. g., determining whether the record "fairly supports" the state courts' decision), its application would be inconsistent with the res judicata principle underlying *Stone*.

This conclusion means that a district court in receipt of a habeas petition with a fourth amendment claim that has been raised at trial must determine whether the state proceedings satisfied *Townsend*. If not, an evidentiary hearing is required in federal court. If the *Townsend* hearing fails to bring out any new material evidence in regard to a fourth amendment claim, the district court should dismiss the petition without further consideration. In light of *Stone*'s conclusion that state judges are equally competent in treating fourth amendment claims, a federal judge confronted with the same record is bound by the previous state decisions. If new material facts favorable to the petitioner are developed, however, the district court would then have to make its own determination on the merits of the fourth amendment claim.

■ Quite apart from *Stone*, an independent state ground could also serve as a valid basis for a district court's refusal to consider a fourth amendment claim, provided that the asserted state ground serves a legitimate function and does not unduly burden the exercise of federal rights. The independent state ground would then bar review unless the petitioner is able to show cause why he did not comply with state procedures, as well as prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). For example, when the asserted state ground is based on a failure to raise a fourth amendment issue at trial (e. g., a contemporaneous objection rule), *Stone* does not bar review because the res judicata considerations underlying *Stone* are inapplicable. *Wainwright*, however, will probably bar habeas consideration of such a claim. The Court observes that the combined effect of *Stone* and *Wainwright* is virtually to abolish federal habeas relief on fourth amendment claims; *Stone* bars relief if the claims have been raised,

---

**6.** The *Townsend* Court listed six separate situations in which a district court is required to hold its own evidentiary hearing: (1) the state court did not resolve the merits of the factual dispute; (2) the record does not fairly support the state courts' factual determinations; (3) the state courts used an inadequate fact-finding procedure; (4) the habeas petition alleges newly discovered evidence; (5) the state courts did not develop evidence crucial to the proper consideration of the constitutional claim; or (6) it appears for any reason that the trier of fact did not afford the petitioner a full and fair hearing. 372 U.S. at 313, 83 S.Ct. at 757.

while *Wainwright* forecloses relief on claims that have not been litigated in the state system.

The Sixth Circuit has not dispositively treated the question. of *Stone*'s meaning. So far as this Court has been able to determine, there are only three published decisions that have any bearing on the issue: *Moore v. Cowan*, 560 F.2d 1298 (6th Cir. 1977); *Bradley v. Cowan*, 561 F.2d 1213 (6th Cir. 1977); *Simpson v. Kreiger*, 565 F.2d 390 (6th Cir. 1977).

In *Moore v. Cowan, supra*, the petitioner Randolph (one of several appellants) had raised a search-and-seizure issue at his trial and on direct appeal. The Kentucky appellate court refused to address the merits of the fourth amendment issue, having found that any error was harmless. The petitioner argued that *Stone* did not preclude the relitigation of his claim, because the Kentucky court had failed to address its merits. The Sixth Circuit rejected that argument, holding that *Stone* does not require the state reviewing court to "fully expound upon such alleged error." 560 F.2d at 1302. The court read *Stone* as precluding review if the state courts have taken cognizance of the constitutional claim and rendered a decision "in light thereof." *See* page 5 *supra*.

In *Simpson v. Kreiger*, 565 F.2d 390 (6th Cir. 1977), the petitioner had raised a fourth amendment claim regarding the validity of a search warrant at trial and on direct appeal to the Ohio Court of Appeals, which affirmed his conviction. The Ohio Supreme Court and the Supreme Court of the United States. both declined review. 565 F.2d at 391. The petitioner raised the search warrant issue again on habeas corpus, but the district court, relying on *Stone*, refused to consider it. The Sixth Circuit affirmed, having found that the petitioner had received a full and fair hearing on his claim. The petitioner argued that the State's refusal to name the informant whose information led to the search warrant deprived him of an adequate hearing, but the court summarily rejected that assertion.

*Bradley v. Cowan*, 561 F.2d 1213 (6th Cir. 1977), contains the Sixth Circuit's most extensive discussion of *Stone*, but unfortunately this discussion was conducted by each of the three judges on the panel. The petitioner in *Bradley* had been convicted in a Kentucky court for armed robbery. Some of the physical evidence used against him had been seized during a search of his hotel room. Petitioner challenged the admissibility of this evidence both prior to and at trial, but according to Judge Edwards, who wrote the opinion for the court, these motions were denied without hearing. 561 F.2d at 1215. It is apparent that the factual basis for the motions was developed to some extent, however, because the Kentucky Court of Appeals addressed petitioner's search-and-seizure claim on its merits, holding that he consented to the hotel room search. *Bradley v. Commonwealth*, 439 S.W.2d 61 (Ky.App.1969). The federal district court conducted an evidentiary hearing on the petitioner's subsequent habeas petition, but denied relief. *Stone v. Powell* intervened in the interval between the district court's action and the Sixth Circuit's appellate consideration of Bradley's claim, and thus the Kentucky Attorney General argued that *Stone* precluded further federal review. Judge Edwards rejected that argument, concluding that the trial court's summary denial of the petitioner's suppression motions failed to satisfy *Stone*'s "full and fair hearing" requirement. He therefore reached the merits of petitioner's claim, rejecting the Kentucky Court of Appeals' conclusion that the petitioner had consented to the search. He ultimately concluded, however, that the admission of the illegally seized evidence was harmless error.

Former Chief Judge Phillips, concurring in the result, disagreed with Judge Edwards on the *Stone v. Powell* issue. In his brief concurrence, he concluded that the petitioner had been provided an opportunity for full and fair litigation, because he had raised the issue before trial, at trial, on direct appeal, and by a motion to vacate sentence. Judge Phillips did not elaborate on his interpretation of *Stone*, but his citation to the reported opinion of the Kentucky Court of Appeals suggests that he might have been particularly influenced by that Court's decision on the merits of the petitioner's claim.

Judge Weick also concurred in the result, but he likewise disagreed with Judge Edwards on the *Stone v. Powell* issue. He emphasized that the state court of appeals had reached the merits of the petitioner's argument.

Having examined these decisions of the Sixth Circuit, the Court is satisfied that its own interpretation of *Stone* as, in effect, a res judicata doctrine is not a departure from these three cases. Indeed, the Court ventures to suggest that a more niggardly interpretation of *Stone* (e. g., the Fifth Circuit view) would be inconsistent with the interpretation of *Stone* reflected by *Bradley, Moore*, and *Simpson*. This is because the Fifth Circuit view that the mere existence of state procedural mechanisms satisfies *Stone* was not the rationale for these decisions. It should also be emphasized that the petitioners in all three cases had in fact raised their arguments at trial and on direct review. *Bradley*, almost dispositively, seems to require that there have been litigation in fact of a fourth amendment issue at the state level before *Stone* precludes habeas review. The disagreements in *Bradley* stem from differing ideas of what constitutes an opportunity for full and fair litigation. *See* 3 W. LaFave, Search and Seizure § 11.7, at 755 n.160 (1978). Judge Edwards concluded that there had been no genuine litigation of the petitioner's argument, because the trial judge "abruptly denied" it. Judges Phillips and Weick, on the other hand, seemed to think that the facts had been adequately developed at trial, as reflected by the appellate court's disposition on the merits.

In *Bradley*, the Sixth Circuit had held at an earlier stage of Bradley's habeas litigation that the state proceedings in regard to his search-and-seizure claim failed to satisfy *Townsend*, and therefore remanded the case to the district court (which had earlier dismissed the petition) for an evidentiary hearing. *Bradley v. Cowan*, 500 F.2d 380, 381 (6th Cir. 1974). That court held a hearing, but still decided that petitioner's fourth amendment rights had not been violated. *See Bradley v. Cowan*, 561 F.2d 1213 (6th Cir. 1977). Although the Court cannot state this conclusion with total certainty, it appears that the evidentiary hearing failed to disclose any material facts that were not on the record before the trial court and the Kentucky Court of Appeals when they considered the petitioner's claim. *Compare Bradley v. Commonwealth*, 439 S.W.2d 61 (Ky.App.1969) *with Bradley v. Cowan*, 561 F.2d 1213 (6th Cir. 1977) (especially Judge Weick's concurrence, which quotes extensively from the district court's findings).

Under the analysis proposed by this Court, the district court should have been affirmed on the basis of *Stone* because of the apparent failure of the *Townsend* hearing to disclose any new material evidence requiring a reconsideration of the merits of the fourth amendment claim. Even though the state proceedings had failed to satisfy *Townsend* originally, the subsequent federal hearings showed that the Kentucky Court of Appeals had been presented with all of the relevant facts. *Stone* would therefore bar further consideration of the claim. This was, of course, the result reached by two of the *Bradley* judges; at the risk of appearing presumptuous, the Court has simply attempted in this discussion to articulate more fully a legal framework consistent with their opinions.

To summarize the Court's analysis: *Stone* bars habeas corpus relief on a fourth amendment claim only when the petitioner has in fact raised the issue at trial and on direct appeal. The state courts are not required to make a decision on the merits of the claim, but the state system must take cognizance of the claim and render a decision in light thereof (e. g., by invoking the harmless error doctrine). When the claim is based on disputed factual allegations, the Court will examine the trial record to determine whether the trial court proceedings satisfied *Townsend*. If not, the Court will hold an evidentiary hearing on the search-and-seizure issue. If the hearing discloses material evidence favorable to the petitioner that was not before the state courts, the Court will address the merits of the claim in light of the federal evidentiary hearing. If no new material evidence is brought forth, the Court will dismiss the petition under *Stone*, regardless of whether it would have

reached the same result as the state court.[7] See page 9 *supra*.

■ Turning at last to the instant case, the record shows that petitioner presented his challenge to the truthfulness of Agent Holt's sworn affidavit at trial and on direct appeal to the Tennessee Court of Criminal Appeals.[8] This Court has examined the transcript of petitioner's suppression hearing, and finds that it fully satisfied the *Townsend* test. Accordingly, there is no need for an evidentiary hearing in district court. The court of criminal appeals refused to consider the issue because petitioner failed to introduce the search warrant and affidavit into evidence at the suppression hearing, as required by *Fine v. State*, 183 Tenn. 117, 191 S.W.2d 173 (1945). Because the appellate court declined to "take cognizance of the constitutional claim," either by ruling on its merits or by invoking the harmless error doctrine, *Stone* is inapplicable.

■ The issue then becomes whether this independent state ground for refusing to take cognizance of the search-and-seizure claim also bars federal habeas consideration under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The state appellate courts have an obviously legitimate interest in requiring that a challenged search warrant and affidavit be in the record, and the Court has no hesitation in finding that this independent state ground for refusing to consider petitioner's claim on appeal did not unduly burden his federal rights. Petitioner has not shown cause for this omission; the Court notes that the negligence of counsel does not qualify as cause under *Wainwright*. *See Gates v. Henderson, supra*, 568 F.2d at 843 n.6 (Oaks, J., concurring).

The Court therefore concludes that *Wainwright v. Sykes* bars further consideration of this claim.

### Double Jeopardy Claim

■ Petitioner argues that the imposition of a heavier sentence upon retrial violated the double jeopardy clause of the fifth amendment. The State merely argues failure to exhaust state remedies. The State's position is meritless. Petitioner challenged the propriety of his stricter sentence throughout his appeal and postconviction relief process. The State says petitioner has heretofore alleged only state law problems with his resentencing and thus he cannot raise his federal claims here.

The Sixth Circuit laid down the rules for exhaustion in this circuit in *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978). "All that is required is that the state courts have a fair opportunity to consider the constitutional claim." *Id.* at 203. Although petitioner's arguments may not have focused on the federal constitutional issue, the state appellate court's ruling was based entirely on the federal requirement of vindictiveness. The court of criminal appeals relied on a federal constitutional case, *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), to reject petitioner's sentencing claim. A federal double jeopardy claim was obvious from the circumstances of petitioner's case and was not ignored by the Tennessee courts. Now the state would have this Court ignore it. The rule of *Rachel v. Bordenkircher* does not allow this Court to do so. Petitioner has no federal constitutional double jeopardy claim, however, because as the Tennessee court correctly held, *Chaffin v. Stynch-*

---

**7.** In the presumably rare situation in which a state appellate court takes cognizance of a claim raised for *the first time* on appeal, the Court would find that the claim has been litigated sufficiently to invoke *Stone*. If the issue involves a factual dispute, however, it would be necessary to ensure that the trial record was adequately developed to satisfy *Townsend*; if not, a federal hearing would be required. This situation is extremely unlikely to occur in Tennessee, however, because of Tennessee's contemporaneous objection rule. *See State v. Sut-*

ton, 562 S.W.2d 820, 825 (Tenn.1978); Tenn.R. Crim.P. 12(b)(3), (f).

**8.** He also raised the claim in a certiorari petition in the Tennessee Supreme Court, which was denied. The issue was raised again in petitioner's postconviction relief proceedings, which ultimately terminated with the Tennessee Supreme Court's denial of permission to appeal the adverse decision of the court of criminal appeals, which affirmed the trial judge's denial of relief.

combe, *supra,* requires the second sentence to have been a product of jury vindictiveness. No allegation of vindictiveness was made in this case.

### Ineffective Assistance of Counsel

Although petitioner's counsel at trial failed to introduce the affidavit and search warrant into evidence, this alone does not amount to ineffective assistance of counsel. Judge Pellegrin's decision on petitioner's postconviction relief claim was accompanied by a written opinion, which, as reliable written indicia, entitles his finding to a presumption of correctness. *See* 28 U.S.C. § 2254(d). Petitioner has not overcome that presumption. After fully reviewing the record of plaintiff's trial and posttrial proceedings, this Court concludes that petitioner was represented adequately and effectively.

Having reviewed the entire record in this case, the Court finds that the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), was met. Sufficient evidence was adduced at trial for a rational trier of fact to find proof of guilt beyond a reasonable doubt.

Petitioner's application for writ of habeas corpus is dismissed.